391 So.2d 1159 (1980)
STATE of Louisiana
v.
Robert E. MILLER.
No. 67808.
Supreme Court of Louisiana.
December 15, 1980.
Orleans Indigent, Defender Program, Clyde Merritt, Dwight Doskey, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Fred Harper, David Paddison, Asst. Dist. Attys., New Orleans, for plaintiff-appellee.
*1160 DIXON, Chief Justice.
On the evening of June 19, 1979 Pat Cole was murdered at her apartment in the Magnolia Project. Robert Miller was convicted of second degree murder and sentenced to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence for forty years. He has appealed, relying upon five of his seventeen assignments of error. Finding that none of these assignments constitute reversible error, we affirm his conviction and sentence.
James McDonald, who was living with Cole and present during the murder, testified that Miller and a companion had come to the apartment brandishing a gun and demanding drugs and money. When they arrived, they instructed Donna Dunn and Leon Andrews to leave. Dunn and Andrews, friends of Cole, had come to the apartment to swap some drugs with Cole. According to McDonald, Miller was then told by his companion to kill Cole and McDonald "because they are going to send us to the penitentiary. They're going to rat on us." McDonald says that Cole was killed while he was feigning unconsciousness. McDonald thereafter ran upstairs and pretended to jump from a third story window. The assailants then left, apparently believing that McDonald had committed suicide.

Assignment of Error No. 4
The trial judge in this case, pursuant to C.Cr.P. 798(2), allowed the state to challenge for cause prospective jurors who stated that they could never impose the death penalty. By this assignment of error, defendant contends that such a procedure produces a death-qualified jury which is more guilt prone than one drawn from the general populace. This argument has been rejected by the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and by this court in State v. Berry, 391 So.2d 406 (La.1980).
This assignment of error lacks merit.

Assignment of Error No. 7
By this assignment of error, the defendant contends that the trial judge abused his discretion by limiting the scope of the voir dire examination. Defense counsel had asked two prospective jurors to explain their general attitude toward the death penalty. The trial judge ruled that, without a proper predicate, such an open-ended question was inadmissible.
The scope of the voir dire examination is within the sound discretion of the trial judge. C.Cr.P. 786. The trial judge did not abuse his discretion in the instant case. He gave defense counsel the opportunity to lay a predicate in order to make the question admissible. Defense counsel told the trial judge "never mind" and merely noted his objection. We find that the trial judge afforded sufficiently wide latitude to defense counsel in his examination of prospective jurors on voir dire.
This assignment of error lacks merit.

Assignment of Error No. 9
In this assignment of error, defendant contends that the trial judge did not sequester the jurors as required by C.Cr.P. 791. At the close of the first day of trial, the judge announced that, since he believed the media was not covering the trial, the jurors would be allowed to read the newspaper and watch television. Further, he stated that the telephones would not be removed from the jurors' rooms. However, he admonished the jurors not to use the phones without permission. Defendant argues that, under these facts, a presumption of prejudice arises and reversible error should be presumed. We disagree.
Reliance is placed on State v. Luquette, 275 So.2d 396, 400 (La.1973), in which this court stated:
"Many years ago a rule was established by this Court designed to offer the greatest security to the accused, and at the same time to trench in no wise upon any right necessary to insure the due and proper execution of the law. State v. Hornsby, 8 Rob. 554 (La.1844). The rule *1161 is now embodied in Article 791 of the Code of Criminal Procedure. Briefly stated, the Court announced in State v. Hornsby that in capital cases the jury should not be permitted to separate after they have been sworn, either with or without the consent of the prisoner. This precaution is necessary, it was said, to protect the accused from any undue influence which may be exercised upon the members of the jury, even without their knowledge. Improper impressions may and will be made upon their minds by artful and designing men, of which they may be perfectly unconscious; neither can they shut their eyes to the expression of popular opinion. In capital cases, upon a separation, misconduct and abuse will always be presumed."
In the Luquette case, the jurors were allowed to spend the night at their respective homes. It was the prolonged separation of the jurors which gave rise to the presumption of prejudice. This court has found the presumption to be unwarranted where the jurors are physically separated by only a few feet and there is no evidence of misconduct or outside communication. State v. Quincy, 363 So.2d 647 (La.1978).
Most recently, this court invoked the presumption of prejudice where "there occurred a continuing and substantial failure to adhere to the sequestration mandated in a capital case." State v. Parker, 372 So.2d 1037, 1039 (La.1979). In the Parker case, the jurors were allowed unsupervised recesses, unsupervised telephone calls and unsupervised lunch breaks. Additionally, the jurors were permitted to use their own private transportation to travel back and forth from the hotel to the courtroom. None of these irregularities occurred in the instant case, and Parker is therefore distinguishable.
Defendant does not assert that he has been prejudiced. Rather, he requests that this court presume prejudice. We find that, under the facts of this case, the presumption of prejudice is unwarranted.
Because no prejudice has been shown, any error here was harmless. C.Cr.P. 921.

Assignment of Error No. 10
In this assignment of error, the defendant contends that the judge commented on the evidence in violation of C.Cr.P. 772. The prosecutor, in the presence of the jury, asked the judge to rule on the free and voluntary nature of a purported confession. Immediately thereafter, the judge, accompanied by the attorneys, went into the judge's chambers. While there, defense counsel unsuccessfully moved for a mistrial. After returning to the courtroom, the judge instructed the jurors that they alone were to determine whether the statement was free and voluntary. Then, the judge said: "The Court will rule that the statement is admissible."
Defense counsel argues that, in light of the prosecutor's prior request, the jury could infer that the judge believed the statement to have some weight. This argument lacks merit. The judge did not tell the jury that he believed the statement to be free and voluntary. A fortiori, he gave no indication that he thought the confession to be truthful. Rather, the judge admonished the jurors that they alone should determine whether the statement was free and voluntary. And, the judge properly added that, should the jurors find the statement to be free and voluntary, they were to determine further what weight to give the statement.
This assignment of error lacks merit.

Assignment of Error No. 12
McDonald, Dunn and Andrews, the three people who were at the apartment on the night of the murder, were all called to testify for the state. While on the stand, Andrews denied that Miller was one of the two men who came to the apartment that night. Further, he denied that he had ever identified Miller as one of the men. He also said that he had refused to testify for the state but was threatened by the prosecutor with a contempt of court citation. His rationale for not wanting to testify was because he participated in the life on the *1162 streets and that "... this is a tricky business getting on the stand ... I have a wife and two kids and I just didn't want to take the chance."
Fred Harper, one of the two assistant district attorneys handling the case, then took the stand as an impeachment witness and testified that Andrews had, on two prior occasions, identified Miller as one of the two men. In this assignment of error, defendant contends that the trial judge erred when he allowed Harper to resume his position as prosecutor after testifying in the case.
Before Harper took the stand, the judge and the attorneys met in chambers for argument on the propriety of the state's impeachment of its own witness. The judge overruled defendant's objection to the impeachment because he found that the requisite elements of both surprise and hostility were demonstrated. R.S. 15:487. Defense counsel then objected to allowing Harper to remain as prosecutor. No argument was heard and no formal ruling was given by the judge on the motion. Rather, Harper simply resumed his position as prosecutor.[1]
Our inquiry in this assignment is twofold: first, assuming the impeachment was proper, and assuming it was proper to allow Harper to testify, should the judge have required Harper to relinquish his position as prosecutor; and, second, if it was error to allow Harper to remain as prosecutor, was this reversible error.
Counsel for both sides have contended that this issue is res nova in this state, and have therefore directed this court's attention to the jurisprudence of other states. We find, however, that this court considered the issue in State v. Hopper, 251 La. 77, 203 So.2d 222 (1967), vacated on other grounds, 392 U.S. 658, 88 S.Ct. 2281, 20 L.Ed.2d 1347 (1968). The prosecutor in that case testified as to alleged statements given by the defendants and as to certain events which took place on the morning of the murder. The defendant argued that "it was improper and prejudicial to the rights of the accused for the District Attorney to be both the prosecutor and a material witness in the case." 251 La. at 152-153, 203 So.2d at 249. The court, in rejecting this argument, stated:
"We find that the trial judge had to exercise his discretion in this matter, and under its peculiar facts and circumstances he was constrained to permit the District Attorney to testify. We do not find that he abused his discretion. No authority which absolutely prohibits a district attorney from testifying in a prosecution which he is conducting has been pointed out to us. Counsel for the defendants have not shown that defendants suffered any prejudice from the testimony of the District Attorney. We find no reversible error." 251 La. at 153-154, 203 So.2d at 250.
As the court in Hopper pointed out, and as is generally recognized, the prosecuting attorney is a competent witness. See, for example, Brown v. Commonwealth, 512 S.W.2d 509 (Ky.1974). At issue is not the admissibility of his testimony, but the propriety of allowing him to assume the dual role of witness and advocate.
The danger inherent in allowing the prosecuting attorney to assume the role of witness is that the jury might give inordinate weight to his testimony. Robinson v. United States, 32 F.2d 505, 510 (8th Cir. 1928); People v. Superior Court, County of San Bernardino, 86 Cal.App.3d 180, 207, 150 Cal. Rptr. 156, 173 (Ct.App.1978). Therefore, *1163 although the prosecutor is a competent witness, numerous jurisdictions permit the prosecutor to assume the dual role of witness and advocate only under "extraordinary circumstances." See Annot., Prosecuting Attorney as a Witness in Criminal Case, 54 A.L.R.2d 100 (1974). One such "extraordinary circumstance" exists where the necessity for the testimony could not be anticipated and the attorney involved is the only one familiar enough with the case to adequately conduct its prosecution. See, for example, Tomlin v. State, 81 Nev. 620, 407 P.2d 1020 (1965).
In the instant case, the state argues that it was surprised by Andrews' repudiation of his former identification of Miller. The state was aware that Andrews had said that he would not testify, but was unaware that Andrews had decided to testify that defendant Miller was not the assailant. The state further argues that, although Harper was being assisted by David Paddison, Paddison was not equipped to carry on the prosecution alone. The record does not support this assertion. The record reveals that Paddison had enough familiarity with the case to conduct the voir dire, direct examination of four state witnesses, and cross-examination of one defense witness. Paddison also delivered the state's first closing argument. Whether Paddison could have conducted the prosecution alone after Harper took the stand is a close question on the record. Harper took the stand as an impeachment witness, and testified for the purpose of showing that Andrews had made two prior inconsistent statements. Compare State v. Hayes, 473 S.W.2d 688 (Mo. 1971) (reversal warranted where prosecuting attorney also acts as state's principal witness). The purpose of Harper's testimony was to neutralize the effect of Andrews' assertion at trial that he had never identified Miller as one of the men who came to the apartment.
Andrews' identification of Miller would have been cumulative of the testimony of McDonald and Dunn. McDonald, who had known Miller for seven years, positively identified him as one of the assailants.[2] Additionally, Dunn, who had occasionally seen Miller around the project, was positive in her identification of him.
Of course district attorneys should avoid the dual role of prosecutor and witness. The general rule, governing all lawyers, prohibits testimony by attorneys who are engaged in the trial of the case, (Code of Professional Responsibility, DR 5-101(B), 102) except in isolated circumstances. Even stronger reasons weigh against testimony by a prosecutor. See Robinson v. United States, supra, at 510, where the court said:
"... No hard and fast rule can be laid down as to when it is permissible for a prosecuting attorney to become a witness against a defendant and remain as prosecutor. Circumstances might arise in the trial of a case making it necessary that the prosecuting attorney or his assistant become a witness, but these cases are few and exceptional. The function of a prosecuting attorney and a witness should be disassociated. A jury naturally gives to the evidence of the prosecuting attorney far greater weight than to that of the ordinary witness. Circumstances might exist where the prosecutor could not withdraw from the case. He might be the only attorney familiar with the case, and the only one engaged in the prosecution. The tendency of a situation where a prosecutor in a criminal case becomes a witness for the government is to prevent somewhat that fair trial to which a defendant is entitled."
Here, however, even if we should find the ruling of the trial judge to have been erroneous, the error was harmless. Foremost, Andrews himself indicated in his testimony that he said what he did because to do otherwise was dangerous. Next, the prosecution *1164 did nothing more than reveal facts which tended to impeach Andrews' testimony. The entire argument of the state is not before usonly that part to which objections were made. And the defense objected throughout the trial, frequently and diligently, at whatever seemed to be unduly disadvantageous to the defense. No objections to the argument of the state on the impeachment of Andrews appears in the record. We find Harper's failure to withdraw from the trial after testifying did not prejudice the defendant.
There is no merit in this assignment.
For these reasons, the conviction and sentence are affirmed.
NOTES
[1] After the trial judge announced his reasons for allowing the state to impeach its own witness, the assistant defense counsel said, "Just to clarify one matter." At this point Clyde Merritt, principal defense counsel, interrupted and said, "Don't cure it." The judge admonished Merritt: "Mr. Merritt, I hate that attitude and I'll state that for the record. Laying traps for the Court or anyone else concerned doesn't cure it. Counsel told his co-counsel here, `Don't cure it.'" Merritt responded: "The question I had for the Court is will Mr. Harper be allowed in as prosecutor after he gives testimony. I objected to it." The next notation in the record is: "Everyone moves back to open court in the presence of the jury." According to the record, the judge never responded to Merritt's objection.
[2] Defense counsel asserts in brief that McDonald "clearly had a grudge against the defendant for having slept with his common-law wife." There is no evidence in the record to support the assertion that the defendant had "slept" with Cole. The defendant testified that he stayed at the victim's apartment on three or four occasions, but that he was accompanied by another girl he knew.