407 So.2d 678 (1981)
STATE of Louisiana
v.
Esther PENNS.
No. 81-KA-0923.
Supreme Court of Louisiana.
December 14, 1981.
*679 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Lindsay Larson, Asst. Dist. Attys., for plaintiff-appellee.
Clyde D. Merritt, and Dwight Doskey, of Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
KLIEBERT, Justice Ad Hoc[*].
On May 24, 1979, detectives were investigating the shooting of a ten year old child who was then hospitalized at Charity Hospital for gunshot wounds. They found the child's mother, Esther Penns, the defendant here, in the waiting room at Charity Hospital. She was orally advised of her rights and asked to accompany the detectives to the Juvenile Division for questioning. She was taken to the Juvenile Bureau and prior to questioning was read her Miranda rights from the Rights of Arrestee form used by New Orleans Police and signed a statement which acknowledged her having been read her rights.
While giving an inculpatory statement regarding the attempted murder of her daughter, the defendant admitted to the drowning of her four year old son, Hiram, who had been missing since May 13, 1979 and was placed under arrest. The statement was taped and subsequently transcribed by one of the officers and submitted to the defendant who signed it.
The following day, May 25, 1981, she was brought before the Magistrate who appointed counsel. On the same day, i.e., the day after the statement was given, the detectives found a badly decomposed body of a child in a green plastic bag which had been shoved under some yucca bushes behind the St. Bernard Housing Project where Ms. Penns lived. The same night, two detectives interviewed her in the prison. The defendant was advised of her Miranda rights which included her right to remain silent and a right to have an attorney present during questioning. She proceeded to give a brief oral statement which admitted that the body found in the garbage bag was that of her son.
Prior to the trial, defense counsel filed a motion to suppress the confessions and the evidence. After a hearing the trial judge found and ruled that the statement made on May 24, 1979 was made under full knowledge of her rights and without coercion and, hence, was admissable. Additionally, the trial judge found that the oral statement made in parish prison on May 25, 1979 was a pre-indictment statement and, hence, admissable. The motions to suppress were denied. The defendant was indicted on June 7, 1979 and on December 13, 1979 was tried and convicted for first degree murder of her son, Hiram Davis, by a unanimous twelve person jury. She was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. On appeal, five assignments of error are made and argued.
The first assignment of error concerns the trial judge's refusal to suppress the taped and written statement taken from *680 the defendant on May 24, 1979 as well as the oral inculpatory statement made on May 25, 1979. The defendant's counsel argues that the defendant's constitutional rights were violated because she did not knowingly and intelligently waive her rights to remain silent and to have her attorney present at the time of questioning. As far as the written statement is concerned the arguments centered around the following questions asked by the police officer and the answers given by the defendant.
"Q. You've signed form of N.O.P.D. Rights of Arrestee Form # 130415, indicating that you have understood your rights and wish to waive them, is that correct?
A. What that means, wish to waive them?
Q. In other words, you are going to talk to us and make a statement about your knowledge about what happened.
A. Yes."
Counsel argues that since she did not know what the word "waive" meant, and she was not adequately instructed as to its meaning, she could not willingly and intelligently waive her rights.
The principles that govern a custodial interrogation once the required warnings have been given were set forth by the Supreme Court in Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980), by restating the principles from Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):
"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694.
Taken out of context rather than as part of the whole, the portion of the statement made by the defendant and above quoted might lead one to conclude the defendant did not willingly and intelligently waive her constitutional rights to remain silent. From the entirety of the evidence submitted at the hearing of the motion to suppress the statement, the trial judge concluded and we conclude that the defendant did willingly and intelligently waive her right to remain silent and her right to counsel. According to the police officer's testimony, the defendant was orally informed of her Miranda rights and was then read the rights from the Right of Arrestee form and then agreed to and did sign the Rights of Arrestee form as well as the statement in question here. Although the tape made at the time the statement was given is not in evidence, there is ample testimony by the police officers taking the statement for the trial judge and for us to believe the statement was transcribed as given. Reading the statement as a whole leads us to believe the defendant knowingly waived her Miranda rights because she wanted to confess to what she had done. When Officer Henderson was asked on cross-examination why he thought Ms. Penns understood her Miranda rights, he replied: "Because I said it in simple terms and I went over it with her and she said she understood and she seemed to be a reasonable, intelligent type person, so I figured she understood."
Following the admission of her confession into evidence, the defendant took the witness stand before the jury and testified that she had gone only to the fourth grade in school, her mother had said she *681 was retarded and she did not understand what it meant to waive her rights. Her counsel now contends her low intelligence prevented her from giving a knowing and intelligent waiver. Moderate mental retardation and low intelligence or illiteracy do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Anderson, 379 So.2d 735, 736 (La.1980). Here, according to the evaluation report of Dr. Ory, the defendant's intelligence was judged to be "in the normal range." Further, reading the responses given by the defendant to the questions propounded during the trial leads us to agree with the expert's conclusion that the defendant was of normal intelligence. The lack of formal schooling is not synonymous with lack of intelligence. At the time the statement was given, the defendant knew and understood her rights but wanted "to let it all hang out." Her present claimed retardation does not support a contention of low intelligence; but rather, shows the actions of an intelligent mind seeking to avoid the consequences after letting it "all hang out."
The trial court's conclusion on the credibility and weight of the testimony relative to defendant knowingly and willingly waiving her Miranda rights are not to be overturned unless unsupported by the evidence. State v. Castillo, 389 So.2d 1307 (La.1980); State v. Jones, 386 So.2d 1363 (La.1980). The trial judge's conclusion here is supported by the evidence; hence, the trial judge correctly denied the motion to suppress the written statement.
As to the oral statement given the day following the giving of the written statement, the defendant argues that since counsel had been appointed by the Magistrate and she had not initiated the conversation, the State should not have questioned her out of the presence of her counsel.
The police officer taking the statement testified he was unaware the defendant had been appointed counsel by the Magistrate. Although he was aware that within 24 hours of being charged the law required that the accused be taken before a Magistrate and a counsel appointed for the accused if she had not retained counsel, he did not ask whether she had counsel nor did she volunteer the information that counsel had been appointed. The police officer did testify, however, that he had told her of her Miranda rights. Thus, at the time of this interrogation, according to the testimony of the police officers, the defendant had been told of or read her Miranda rights and had been explained what they were at least three times by the police officer. Since the defendant is of normal intelligence, after having been informed of her Miranda rights on at least three occasions, the defendant knew she could remain silent or have her counsel present during the interrogation. She chose not to do so. There is no indication in the record that the State desired to or was in fact subverting the defendant's constitutional rights. Rather, since the defendant had knowingly and voluntarily given a written statement of her acts the day before, it is natural and logical for her to knowingly and willingly want to acknowledge that the garbage bag and body exhibited to her by the police officer were those she had reference to in the statement, particularly where, as here, the defendant testified that she wanted the police officers to know what had happened and to discover the body of her son. Under the circumstances of this case, therefore, we believe the trial judge's denial of the motion to suppress the oral statement was correct.
In assignments of error 2 and 5, the defendant argues the trial court erred in denying his motion to quash the Witherspoon[**] voir dire and thereafter granting challenges for cause on the basis of Witherspoon. The first part of the argument is grounded in the contention that the Witherspoon voir dire produces a more guilt prone jury than one drawn from the general venire. This argument was rejected in the Witherspoon case and by this court in State v. Miller, 391 So.2d 1159 (La.1980) and State v. Berry, 391 So.2d 406 (La.1980).
*682 In the second part of this argument the defendant argues that to allow the State to challenge for cause when the juror demonstrates an unequivocal attitude against the death penalty, without allowing the defense the opportunity to traverse the juror for rehabilitation gives the State an additional peremptory challenge not afforded to the defense.
The arguments of the defendant are refuted by the record. The Witherspoon voir dire was thoroughly explained to the jurors by the prosecutor and the judge and both the State and the defense were allowed to question the prospective jurors. Thus, the requirements of State v. Claiborne, 397 So.2d 486 (La.1981) were met. Since the jurisprudence supports the Witherspoon voir dire and defense counsel had the opportunity to rehabilitate the jurors, these assignments of error lack merit.
Assignments of error 3 and 4 attack the trial judge's ruling requiring defense counsel to ask some questions to the jury as a whole rather than to individual jurors. Defendant contends that forcing her to ask group questions and the refusal to permit her to ask individual jurors repetitive questions violates her rights under Article I, Section 17 of the Louisiana Constitution to a full voir dire examination of jurors.
The defendant misrepresents what appears in the transcript. The judge did take over the voir dire when the defense counsel refused to follow his orders. When new prospective jurors were called up the judge wanted counsel to ask them general, repetitive questions as a panel, and then, upon responses from certain jurors, counsel could then individualize the voir dire. Further on, the judge repeats himself that counsel could ask general questions of the panel and check each juror for his response.
The record of his voir dire reflects that the trial judge did indeed allow the defense counsel to individually question prospective jurors. The judge demanded that counsel use his method of asking a general question to the panel first and then asking the individualized questions. Unless a clear abuse of discretion by the judge is found and/or a real prejudice to the defendant is shown, the trial judge's rulings during voir dire will not be disturbed on appeal. One of the defendant's objections to the group voir dire examination as opposed to an individual voir dire examination is that prospective jurors will be influenced by the comments and prejudices of other veniremen. This court has previously held that the trial judge's refusal to insulate prospective jurors from the voir dire examination of other prospective jurors does not in the absence of special circumstances deny a defendant a fair trial. State v. Hegwood, 345 So.2d 1179 (La.1977). The defendant argues special circumstances are present here, namely, a capital punishment case coupled with the killing of a small child. He argues an individual voir dire would have been more appropriate because defense counsel could then uncover biases held by prospective jurors through narrowly focused questions and obtain answers which are the individual juror's response rather than the response of some other juror who was questioned before him. Defense counsel failed to argue this in his contemporaneous objection at the beginning of the voir dire, therefore, this ground is not available to him on this appeal. State v. Johnson, 389 So.2d 372 (La.1980). In any event, defense counsel failed to show any specific prejudice arising out of the trial judge's failure to conduct an individual voir dire. When the jury returned a verdict of life, rather than death, the special circumstances claimed by the defendant were eliminated.
Since the record reflects that the trial judge gave defense counsel opportunity to individually question prospective jurors with no resulting prejudices imposed by group directed questions, there is no basis for disturbing the trial judge's rulings during the voir dire for they were well within the discretion permitted to the trial judge.
For the reasons stated the conviction of the defendant is affirmed.
DIXON, C. J., dissents with reasons.
DENNIS, J., concurs.
*683 DIXON, Chief Justice (dissenting).
I respectfully dissent.
After a lawyer was appointed to represent defendant on May 25, the police should not have initiated further questioning of defendant. The repetition of defendant's "Miranda" rights is not sufficient to show her waiver of the right to have counsel present at a further interrogation.
NOTES
[*] Judges Thomas J. Kliebert and Robert J. Klees of the Court of Appeal, Fourth Circuit, and Judge Ned E. Doucet, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associated Justices ad hoc joined by Chief Justice Dixon and Justices Calogero, Dennis and Watson.
[**] Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).