562 So.2d 12 (1990)
STATE of Louisiana
v.
Gregory Roy HILL.
No. 89-KA-746.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1990.
Rehearing Denied May 17, 1990.
Harry J. Morel, Dist. Atty., Gregory Champagne and Kurt Sins, Asst. Dist. Attys., Hahnville, for plaintiff-appellee.
Mark A. Marino, Destrehan, for defendant-appellant.
Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Gregory Hill was charged by bill of information with possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1. The underlying felony for this charge was Hill's 1980 conviction for attempted second degree murder. He pled not guilty and after a two-day jury trial was found guilty as charged. The trial judge sentenced Hill to serve seven years in the custody of the Department of Corrections without benefit of parole, probation or suspension of sentence. The court further ordered that sentence to run consecutive with the sentence Hill was then serving as a result of the revocation of his parole on the 1980 attempted second degree murder conviction. Finally, the trial judge imposed a $2,000.00 fine on the defendant and ordered that the weapon involved in this case be forfeited. This appeal followed and the defendant alleges *13 that there was insufficient evidence to find him guilty.

FACTS
On the night of October 30, 1988, at approximately 10:45 p.m., the St. Charles Parish Sheriffs Office received a report that a black male dressed in a dark colored shirt was armed with a shotgun in the parking lot of the Ponderosa Bar and Restaurant in Boutte. Three police officers, were dispatched to investigate the situation. As the three officers proceeded to the scene, they received a second transmission from the sheriffs office dispatcher that shots had been heard in the parking lot. The officers were further advised that the subject was near a pink Thunderbird in the bar's parking lot.
They observed a black male wearing a dark shirt standing on the driver's side of the Thunderbird, holding a shotgun. The suspect, later identified as Gregory R. Hill, then placed the shotgun under the car by the driver's side and got into the driver's seat of the vehicle. The officers reached the vicinity of the Thunderbird and ordered Hill to get out, with his hands in sight. One of the officers frisked Hill for weapons and then handcuffed him. A 12gauge, double barrel shotgun and a cartridge belt containing live 12-gauge shells were found just under the driver's side of the vehicle. The defendant's girlfriend, Ms. Gloria Ingram, was sitting on the passenger side of the automobile, and three of her young children were in the vehicle's back seat. The officers opened the breech of the shotgun and removed two expended shells which, based on the smell of the shells and the barrel of the weapon, appeared to have been recently fired. After Hill was taken into custody, it was learned that he was out of jail on parole for his 1980 attempted murder conviction.
The defendant testified at trial that he did not have a shotgun in his possession on the night of this incident. Ms. Gloria Ingram took the witness stand and stated that she did not see the defendant with a shotgun that night. The defendant's brother, Pelton Hill, testified that he placed the shotgun under the vehicle in the parking lot of the Ponderosa after returning from a hunting excursion that night. However, Hill further testified that he placed nothing else under the vehicle that night, thereby failing to account for the presence of the cartridge belt under the automobile.
The defendant contends that his conviction must be set aside for lack of sufficient evidence to prove one of the essential elements of the crime, namely, that the shotgun discovered at the time of Hill's arrest was a "firearm" as that term is used in LSA-R.S. 14:95.1. Hill argues that the term "firearm" in LSA-R.S. 14:95.1 encompasses only operable firearms, and that the state failed to present any evidence at trial that the shotgun found upon the defendant's arrest was operable.
The due process standards announced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1970) apply in evaluating the sufficiency of evidence to support a conviction in a criminal proceeding. Under Jackson, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560.
In pertinent part, LSA-R.S. 14:95.1 provides that "It is unlawful for any person who has been convicted of first or second degree murder, ... or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, ... to possess a firearm ..." (emphasis supplied). The jurisprudence has recognized that the crime of possession of a firearm by a convicted felon has three elements:
1) status of the defendant as a convicted felon;
2) physical and/or constructive possession by the defendant; and,
3) the instrumentality possessed was a firearm.
State v. Mose, 412 So.2d 584 (La.1982); State v. Williams, 470 So.2d 356 (La.App. 5th Cir.1985).
*14 At trial, the defendant stipulated to his previous conviction for attempted second degree murder thereby establishing his status as a convicted felon. In his brief on appeal, Hill accedes to the jury's factual determination of his possession. The possession element of this crime is therefore not at issue on appeal. Rather, the third element of the crime, dealing with the identification of the instrumentality as a firearm, is the sole issue underlying this appeal.
The thrust of Hill's argument is that the state failed to prove the "firearm" element of the crime because the shotgun at issue was "manufactured in the 1800's" and no evidence was presented that the shotgun was operable. This argument was soundly rejected by the appellate court in State v. Rogers, 494 So.2d 1251, 1254-1255 (La.App. 2nd Cir.1986):
LRS 14:95.1 does not define the term "firearm" or distinguish an "antique" firearm. The statute does not require that the firearm be loaded at the time of possession. State v. Silva, 447 So.2d 1242 (La.App. 4th Cir.1984), writ denied. We cannot conclude that the statute requires that the firearm be operable at the time it is possessed.
* * * * * *
We hold that LRS 14:95.1 does not exclude antique firearms and does not require that the firearm possessed by the defendant be operable.
The defendant in Rogers, supra, was convicted under LSA-R.S. 14:95.1 based on his possession of an antique rifle, some eighty years old, without any evidence whether the rifle's action was still in working order. Moreover, this court, in State v. Brooks, 496 So.2d 1208 (La.App. 5th Cir.1986) found that the firearm element of LSA-R.S. 14:95.1 was sufficiently proven by a police officer's trial testimony describing the weapon in that case as a "double-barrelled shotgun" and the introduction into evidence of the weapon. Id. at 1209. In the present case, one of the officers testified that he observed the defendant holding the shotgun introduced as a trial exhibit. Considering the evidence in this case under the Jackson, supra, standard, there was sufficient evidence to support the defendant's conviction for possession of a firearm by a convicted felon. State v. Mose, supra; State v. Brooks, supra.
This assignment of error has no merit.
In reviewing the record for error patent, the following error was noted.
La.C.Cr.P. art. 791C provides that "In non-capital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court." Here the trial judge charged the jury, which then retired to deliberate. However, after the jury had deliberated for about two hours, the trial judge released the jury members for the night and instructed them to return to court the following morning.
Under La.C.Cr.P. art. 791 C, sequestration of the jury in a non-capital case after the court's charge is mandatory. State v. Willis, 371 So.2d 1327 (La.1979). Moreover, failure to comply with the mandatory provisions of La.C.Cr.P. art. 791 is an error patent on the face of the record, subject to review without written error assignment or motion. State v. Willis, supra; State v. Parker, 372 So.2d 1037 (La. 1979). See State v. Buchanan, 439 So.2d 576 (La.App. 1st Cir.1983).
As the Louisiana Supreme Court stated in State v. Willis, supra:
The purposes of sequestration are to insulate the jurors from outside influence, or the possibility thereof, and to insure that their verdict will be based upon the evidence developed at trial. State v. Parker, supra: State v. Marchand, 362 So.2d 1090 (La.1978). So strictly is the prophylactic rule enforced that upon separation of the jury a presumption of prejudice arises which may only be rebutted if it affirmatively appears that no prejudice to the accused could have resulted.
Supra at 1328.
Since this issue was not raised at the trial the record fails to disclose that no prejudice to the defendant could have resulted *15 from the overnight release of the jury during deliberation. While we do recognize that neither the defendant nor his attorney have raised any objection here or alleged that Hill was prejudiced in anyway, never-the-less the mandate of Art. 791 to sequester the jury after the court's charge must be complied with or it is reversible error.
Accordingly, the defendant's conviction is reversed and the case is remanded to the district court for a new trial.
REVERSED AND REMANDED.