707 So.2d 72 (1998)
STATE of Louisiana
v.
Gordon ALLEN.
No. 97-KA-696.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 1998.
*74 Laurie A. White, Louisiana Appellate Project, New Orleans, for Appellant/Defendant.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Assistant District Attorney, Gretna, Louise Korns of counsel to the Office of District Attorney, Gretna, for Plaintiff/Appellee.
WICKER, Judge.
Gordon Allen was charged by Bill of Information with attempted first degree murder in violation of La.R.S. 14:27-30, and illegal carrying of a weapon by a convicted felon in violation of La.R.S. 14:95.1.[1] The defendant was tried on the charge of attempted first degree murder. After closing arguments, the twelve person jury began deliberations. The judge released the jurors without sequestering them. The jury returned for further deliberations the following morning[2] and unanimously returned with the responsive verdict of guilty of attempted manslaughter. The trial judge subsequently sentenced the defendant to serve twenty (20) years at hard labor. The defendant now appeals. We affirm the conviction and sentence.
The defendant assigns as errors the following: (1) the insufficiency of the evidence; (2) the pressure reportedly placed on the jury to reach a verdict; (3) the trial judge's failure to remind the jury it could return a verdict of not guilty, and (4) the ineffective assistance of counsel.

JURY PRESSURE
By this assignment of error, the defendant contends that he was denied his right to a fair trial because the trial judge unduly pressured the jury to reach a verdict by asking the jurors after deliberations had begun how late they wanted to work. The state contends that this assignment of error is moot since the trial judge did not force the jurors to stay and deliberate, but rather let them leave. The record reflects that the jury retired to deliberate at 7:29 p.m. At 9:55 p.m., the trial judge called the jurors into the courtroom and carefully explained to them he wanted a "feel" for how late they wanted to work that evening while giving them the option of returning the following morning to continue. Defense counsel objected on the basis he felt this discussion was placing pressure on the jury. The trial judge explained he was merely asking the jurors for a "reading" of how long they wanted to work.
After discussing the matter among themselves, the jury elected to return the following morning. Although the defendant contends that the trial judge's comments to the jury pressured the jury to reach a verdict, the record does not support this position. The record reflects that the jury did not reach a verdict that night, but rather returned a verdict the following morning. There is no evidence that the jury was pressured in any way by the trial judge's comments.

JURY INSTRUCTION
The defendant contends that he was denied due process of law because the trial judge twice read the verdicts responsive to attempted first degree murder, but failed to remind the jury that "not guilty" was also a responsive verdict. The defendant admits that he is now precluded from raising this issue on appeal because his counsel did not lodge a contemporaneous objection, but urges this court to review this alleged defect in the interest of fundamental fairness.
*75 In State v. Lassere, 95-1009 (La.App. 5th Cir. 10/1/96) 683 So.2d 812, 819, writ denied, 96-2655 (La. 4/18/97) 692 So.2d 445 we recognized that "due process considerations may sometimes require that a jury instruction be reviewed even in the absence of a contemporaneous objection."
Even assuming the issue merits review by this court, we find no merit to this assignment of error. The standard for reviewing jury charges requires that the charges be read as a whole. A verdict will not be set aside because of an objection to a portion of the trial court's charge unless that portion, when considered in connection with the remainder of the charge, is shown to be erroneous and prejudicial. State v. Broussard, 202 La. 458, 12 So.2d 218, 220 (La. 1942). Considering the jury instructions as a whole, we find no merit to this assignment of error.
Although the record reflects the trial judge omitted instructing the jury it could return a verdict of "not guilty" in final instructions, he nonetheless had previously instructed the jury as to this verdict on two other occasions. Importantly, the verdict form includes "not guilty" as a responsive verdict.

INSUFFICIENCY OF EVIDENCE
The defendant contends that the evidence was legally insufficient to support his conviction because the state failed to prove that he had the requisite specific intent. He argues that there is no evidence showing that he specifically intended to kill Deputy Schmitt because of the defendant's testimony that he only intended to scare Deputy Schmitt and the lack of any other testimony that bullets passed near Deputy Schmitt. The state responds that the defendant's contention lacks merit because the jury chose not to believe the defendant's account of the events.
The standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Lassere, supra.
A determination of the weight of evidence is a question of fact which rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La. 11/27/95) 663 So.2d 27, 35. A fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. State v. Bordenave, 95-2328 (La. 4/26/96) 678 So.2d 19, 20. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. State v. Silman, supra, 663 So.2d at 35.
The defendant was convicted of attempted manslaughter. La.R.S. 14:27 provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La.R.S. 14:31 provides in pertinent part: Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
An essential element of attempted manslaughter is the specific intent to kill. State v. Hidalgo, 95-319 (La.App. 5th Cir. 1/17/96) 668 So.2d 1188, 1197. Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender *76 actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126, 1127 (La. 1982). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741, 751 (La.1982).
The evidence at trial showed the following. Deputies Antonio Frere and Ronald Schmitt were conducting surveillance in a high crime area of Jefferson Parish. Deputy Frere testified he saw the defendant standing on a porch of a house in which numerous narcotics arrests had been made in the past. He further testified that the defendant was selling narcotics to motorists in passing vehicles. The deputies testified that when they approached the defendant, he ran.
The state established the element of specific intent to kill through the testimony of Deputies Schmitt and Frere. Deputy Schmitt testified that he had chased the defendant for about twenty feet and was about ten feet behind the defendant when the defendant turned over his left shoulder and fired two shots at him. The officer fell to the ground, drew his weapon, and gave the police command, "freeze, police, don't move." Deputy Schmitt testified that the defendant turned around, "two-handed with the gun pointed at me and fired it twice." On cross-examination, Deputy Schmitt testified he was approximately fifteen to twenty feet away from the defendant the second time that the defendant fired the gun. He further testified that he saw the flash from the gun both times that defendant fired the gun.
Deputy Frere corroborated Deputy Schmitt's testimony and gave a detailed description of the events to the jury. Deputy Frere testified that he was in his police car following Deputy Schmitt's foot pursuit of the defendant. He saw the defendant running in a full stride with his arms "swinging like in a runner's sprint." He saw the defendant's right hand reach into his waistband.
The defendant removed a chrome handgun, placed it over his left shoulder, and while looking in the direction of Deputy Schmitt, the defendant fired the gun twice. Deputy Frere observed his partner fall to the ground to avoid being shot. While Deputy Schmitt was still on the ground attempting to get up, Deputy Frere testified that the defendant turned around and faced Deputy Schmitt. The defendant pointed the gun directly at Deputy Schmitt, and fired two more shots at Deputy Schmitt. On cross-examination, Deputy Frere testified that although the first two shots appeared to be "wild shots," the next shot fell about three to four feet to Deputy Schmitt's left.
The defendant contends that the state failed to prove that he had the requisite intent to kill Deputy Schmitt because neither of the officers could testify that the bullets passed near to Deputy Schmitt. Additionally, the defendant urges that his testimony showed that he did not intend to kill Deputy Schmitt. The defendant testified that he fired shots over his shoulder twice in the air, not in the direction of the officer. He said he had no idea that Deputy Schmitt was a police officer and that he only wanted "to scare him, to stop him from running behind me."
After hearing all of the testimony, the jury apparently believed Deputies Schmitt and Frere instead of the defendant. It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness. State v. Forrest, 95-31 (La.App. 5th Cir. 2/14/96) 670 So.2d 1263, 1271, writ denied, 96-0654 (La. 6/28/96), 675 So.2d 1117. Only irrational decisions to convict by the trier of fact will be overturned. State v. Silman, 663 So.2d at 35. The jury's decision was not irrational and thus, it should not be disturbed on appeal.

INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant contends that he was denied the right to a fair trial because his trial counsel was ineffective. He complains that he received ineffective assistance of counsel because his trial attorney did not file a motion to reconsider his sentence.
*77 The defendant states that he is thus precluded from appealing his sentence as excessive because of his counsel's failure to file that motion. Nevertheless, the defendant urges this court to review his sentence because he is otherwise prevented from having his sentence reviewed. This court finds no basis for reviewing the sentence since no motion to reconsider sentence was filed in compliance with La. Code Cr.P. art. 881.1.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through an application for post conviction relief rather than direct appeal, so as to afford the parties an evidentiary hearing before the trial court and create an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). However, where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993); State v. Junior, 542 So.2d 23 (La.App. 5th Cir. 1989), writ denied, 546 So.2d 1212 (La.1989).
In the instant case, we conclude that it would be more appropriate for the defendant to raise this claim in an application for post-conviction relief. See State v. Lee, 26542 (La.App. 2nd Cir. 5/12/94) 636 So.2d 634. The defendant testified that he had two prior felony convictions. He was originally charged with another count of illegal carrying of a weapon by a convicted felon in this bill of information. The record reflects that the defendant pled guilty to that charge and was sentenced to ten years at hard labor to run concurrently with this sentence. When the trial judge sentenced the defendant on the attempted manslaughter conviction, the judge told the defendant that the state planned to file an habitual offender bill of information and that the state would seek to enhance his sentence. The record as lodged with this court does not reflect whether or not the state has filed the habitual offender bill. In light of all of these considerations, we conclude that an application for post conviction relief would be a more appropriate vehicle for the defendant to assert this claim.

ERRORS PATENT
In reviewing the record for errors patent we note a potential error patent in the trial judge's failure to sequester the jury after deliberations had begun. The jury exercised the option of returning the following morning to complete deliberations after they had already begun deliberating. However, the jury was not sequestered. La. Code Cr.P. art. 791(C) provides that "[i]n noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court." In State v. Hill, 562 So.2d 12, 14 (La.App. 5th Cir. 1990), writ denied, 567 So.2d 99 (La.1990), the trial judge released the jurors after they had deliberated for two hours. This court held that the trial judge's failure to observe the mandate of Article 791(C) is an error patent and grounds to reverse a conviction. The Hill court, quoting State v. Willis, 371 So.2d 1327, 1328 (La.1979), observed that:
The purposes of sequestration are to insulate the jurors from outside influence, or the possibility thereof, and to insure that their verdict will be based upon the evidence developed at trial. State v. Parker, supra[372 So.2d 1037 (La. 1979)]; State v. Marchand, 362 So.2d 1090 (La.1978). So strictly is the prophylactic rule enforced that upon separation of the jury a presumption of prejudice arises which may only be rebutted if it affirmatively appears that no prejudice to the accused could have resulted.
State v. Hill, 562 So.2d at 14.
In both Hill and Willis, the defendants' convictions were reversed because the record did not reflect that the defendants did not suffer prejudice. But, in the present case, the record reflects that the defendant was not prejudiced by the release of the jury after deliberations had commenced. The record reflects that when the court questioned the jurors whether they had been influenced by or discussed the case, they answered negatively. Additionally, when the jury was polled after the verdict, the court asked the jury to write on the polling slips whether anyone had influenced them and each of the jurors wrote "no." Moreover, *78 after being thoroughly questioned by the trial court, the defendant stated that he understood his rights, including his option to move for a mistrial and was waiving that right. Further, the defendant stated that he did not feel that he had been prejudiced.
We note, however, one error patent. The record reflects that the trial court did not advise the defendant of the prescriptive period for filing post conviction relief at sentencing as mandated by Article 930.8 of our Code of Criminal Procedure. We therefore remand this case to the trial court and order the trial judge to inform the defendant of the provisions of La. Code Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this court's opinion and to file written proof that the defendant received the notice in the record. State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94) 643 So.2d 1289, 1291.
Accordingly, for the reasons stated, the conviction and sentence are affirmed. The case is remanded with instructions to inform the defendant of the notice required by La. Code Cr.P. art. 930.8.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] Before trial, the trial judge granted the state's motion to sever this count from the attempted murder charge.
[2] The defendant stated that he did not want to move for a mistrial and that he would not appeal the trial court's failure to observe the requirement for sequestration as mandated by La. Code Cr.P. art. 791(C).