943 So.2d 614 (2006)
STATE of Louisiana
v.
Joseph BROWN and Jeffery Harris.
No. 2005-KA-1100.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 2006.
Rehearing Denied November 15, 2006.
*615 Eddie J. Jordan, Jr., District Attorney, Graham L. Bosworth, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant, Jeffery Harris.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant, Joseph Brown.
(Court Composed of Judge MAX N. TOBIAS JR., Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
MAX N. TOBIAS, Jr., Judge.
On 30 March 2004, the state filed a bill of information charging the defendants-appellants Jeffery Harris ("Harris") and Joseph Brown ("Brown") each with one count of possession of cocaine with the intent to distribute, a violation of La. R.S. 40:967(A). Both defendants were arraigned and entered not guilty pleas on 1 April 2004. The trial court denied the defendants' motions to suppress evidence on 1 July 2004. On 11 January 2005, the trial of both defendants commenced before a twelve-person jury. The trial concluded the following day. As to Harris, the jury returned a responsive verdict of guilty of attempted simple possession of cocaine. As to Brown, the jury's verdict was guilty as charged.
On 13 January 2005, the state filed multiple bills of information. The defendants were arraigned on the bills and entered not guilty pleas. On 27 January 2005, Harris changed his plea of not guilty to guilty of being a second offender. The court sentenced him to eighteen months at hard labor to run concurrently with any other sentence. As to Brown, a hearing was held on the multiple bill, which charged him with being a quadruple offender. At the end of the hearing, the court reset the matter for argument on 11 February 2005. On 10 February 2005, Brown's defense counsel filed the written objections to the multiple bill. Also on 10 February 2005, Harris's counsel filed a motion for new trial, which was denied; a motion for appeal was granted. On 11 February 2005, the court found Brown to be a fourth offender. On motion of the defense, sentencing was set for 14 February 2005. On that day, counsel for Brown filed a motion for new trial, which was denied. Brown waived sentencing delays, and the trial court sentenced him to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Brown's motion to reconsider sentence was denied; his motion for an appeal was granted.
FACTS
On 23 February 2004, Detective Dennis Bush began a surveillance of a double house located at 2612-14 St. Phillip Street, New Orleans, Louisiana. The detective watched the location from an unmarked vehicle parked a short distance away. He observed two men, later identified as the defendants, exit 2612 St. Phillip Street and enter the other side of the double. A few minutes later they exited. Thereafter, the defendants loitered in front of the residences. Detective Bush watched for approximately thirty minutes, during which he saw six or seven individuals walk up to the defendants and hand one or the other *616 of them what appeared to be currency. After receiving the currency, one of the defendants would remove a plastic bag, retrieve an object inside, and then hand the object to the person who had approached them. Once or twice, the defendants went in and out of both sides of the double house. Believing that the defendants' actions were consistent with selling drugs stored in the building, Detective Bush ended the surveillance and drove a few blocks away where he met with three other officers. To avoid having the undercover vehicle compromised, Detective Bush got in the marked police unit, and he and the other officers drove back to 2612-14 St. Phillip Street with the intention of conducting an investigatory stop of the defendants.
When the officers arrived in the block, Harris ran from the scene. Detectives Roccaforte and Arcana, chased him on foot and apprehended him less than two blocks away. The officers seized $292.00 in currency from him, but he was not in physical possession of any narcotics. Meanwhile, Brown did not flee and was detained by Detective Bush. Detective Bush discovered a plastic bag in Brown's hand; it contained numerous small white objects. Currency in the amount of $165.00 was also seized from Brown.
After the defendants had been detained, the officers decided to enter the building. The door to 2612 St. Phillip Street was partially open, and the officers could see that it appeared to be an abandoned residence. On a chair inside near the door was a loaded .357 magnum handgun.
As to 2614 St. Phillip Street, the officers knocked and were admitted by the occupant, Gail Ricks. They asked her if there was cocaine inside and she said "no," but gave them permission to search. In one of the bedrooms, the officers discovered a bowl containing several small packaged bags of marijuana. Ms. Ricks was arrested for possession of this marijuana. One small piece of crack cocaine was also found in the kitchen.
At trial, Nhon Hoang was accepted by stipulation as an expert in the analysis of narcotics and narcotics packaging. He identified a plastic bag containing twenty-three pieces of a rock-like substance, with each piece also being wrapped in plastic, and stated that the material tested positive for cocaine. He also testified that a green vegetable matter he tested was positive for marijuana and that a single piece of rock-like substance tested positive for cocaine.
The defendants presented no witnesses at trial.
ERRORS PATENT
A review of the record for errors patent reveals one potential error. After the jurors began their deliberations, they returned to the courtroom with a question and then resumed deliberations. At that time, the prosecutors informed the court that they believed one of the jurors (Juror Number 7) had signaled to one of the defendants. Juror Number 7 was briefly questioned by the court after which he returned to the jury room. On his way there, Juror Number 7 advised one of the deputies that he no longer wanted to serve on the jury and, after rejoining the jury, Juror Number 7 told the rest of the panel exactly what transpired in the courtroom.[1] After learning of the incident, the trial court admitted it had erred in failing to admonish Juror Number 7 from speaking of the questioning to his fellow jurors. Counsel for both defendants moved for a mistrial, which the court denied.
*617 The jury returned to the courtroom where they were instructed by the court to cease deliberations and were taken back to the jury room. After being questioned a second time outside the presence of the remaining jurors, Juror Number 7 was excused. The jurors were escorted into the courtroom, at which time the alternate juror became a member of the jury; the jurors were told that this action required them to begin deliberations anew. However, the court also informed the jurors that there was a problem obtaining dinner for them. The court asked them if they wished to deliberate for a while, and if unable to reach a decision, go home, or would they rather "go home now." The jurors indicated they wished to go home immediately. The court instructed the jurors not to discuss the case with anyone, stating that they were "sequestered" but that they would not be sent to a hotel. The court then released the jurors to their homes with instructions to return the next morning.
Although the trial court stated that the jury was "sequestered," allowing them to go to their homes meant that they were not sequestered. Moreover, it was error to allow them to go home after they had been charged. La.C.Cr.P. art. 791 states:
A. A jury is sequestered by being kept together in the charge of an officer of the court so as to be secluded from outside communication, except as permitted by R.S. 18:1307.2.
B. In capital cases, after each juror is sworn he shall be sequestered, unless the state and the defense have jointly moved that the jury not be sequestered.
C. In noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court. [Emphasis supplied.]
In State v. Hill, 562 So.2d 12 (La.App. 5 Cir.1990), the trial judge released the jurors after they had deliberated for two hours. The appellate court held that the trial judge's failure to observe the mandate of Article 791(C) was an error patent and grounds to reverse the conviction. In doing so the court, quoted State v. Willis, 371 So.2d 1327, 1328 (La.1979):
The purposes of sequestration are to insulate the jurors from outside influence, or the possibility thereof, and to insure that their verdict will be based upon the evidence developed at trial. State v. Parker, supra [372 So.2d 1037 (La.1979)]; State v. Marchand, 362 So.2d 1090 (La.1978). So strictly is the prophylactic rule enforced that upon separation of the jury a presumption of prejudice arises which may only be rebutted if it affirmatively appears that no prejudice to the accused could have resulted.
State v. Hill, 562 So.2d at 14.
In Willis, the Supreme Court reversed the defendant's conviction because the record did not affirmatively show that the defendant did not suffer prejudice. The Fifth Circuit reached the same conclusion in Hill. However, the Fifth Circuit later distinguished both of these cases in State v. Allen, 97-696 (La.App. 5 Cir. 1/14/98), 707 So.2d 72. There, the court did not sequester the jurors, but then later questioned them on whether they had been influenced by anyone or discussed the case, to which they all responded negatively. Additionally, when the jury was polled after the verdict, the court asked them to write on the polling slips whether anyone had influenced them. Each of the jurors wrote the word "no." Moreover, the record showed that the defendant was thoroughly questioned by the trial court: he stated that he understood his rights including his right to move for a mistrial and *618 he waived that right. The defendant also stated that he did not feel that he had been prejudiced by the fact that the jury was not sequestered as required by La. C.Cr.P. art. 791.
In State v. Parker, 372 So.2d 1037 (La. 1979), there were several instances during the capital trial where the record did not show that the jurors had been sequestered or placed under the supervision of a court officer during a recess. They were allowed to make unsupervised phone calls and drive themselves to and from the court and the hotel. Although the defense never objected at trial and actually agreed to several of the violations, the Supreme Court reversed the conviction when the sequestration issue was raised for the first time on appeal.[2] In a footnote, the court stated:
We note, however, that the jurisprudence of this state has long recognized that it is not necessary for a defendant to complain of injury resulting from the failure of the trial court to sequester jurors as required by law, nor may an accused prejudice his rights by affirmatively consenting to such a method of conducting his trial. [Citations omitted.]
Id. at 1038 n. 1.
The Supreme Court itself distinguished Parker in State v. Miller, 391 So.2d 1159 (La.1980), another capital case. In Miller, the jury was allowed by the trial court to read newspapers and watch television, as well as have unsupervised access to telephones in their hotel rooms during the trial. On appeal the defendant argued that the court should presume prejudice and reversible error. The court declined to do so, finding that in Parker, there had been a continuing and substantial failure to adhere to the sequestration rule. The court rejected the defendant's argument of presumed prejudice, finding that under the facts no such presumption was warranted, and concluded that "[b]ecause no prejudice has been shown, any error here was harmless.C.Cr.P. 921." Id. at 1161.
In Willis, no objection was made by the defense when the court released the jurors to their homes on Friday evening with the instructions to return on Monday to resume their deliberations. However, the Supreme Court stated that because the violation of the sequestration rule was an error patent on the face of the record, it was reviewable in the absence of an objection. The court further stated that the "extended separation" of the jury "exposed it to improper influences" which could only be speculated upon, and because there was "no indication that defendant was not prejudiced" reversal was required. Willis, 371 So.2d at 1328. The offense in Willis was not a capital offense.
In Hill, supra, rendered several years after Miller, the appellate court specifically recognized that there had been no objection at trial, that the issue was not raised by the defendant on appeal, and the defendant had not alleged that he was prejudiced in any way. The court even stated that it was because the issue had not been raised at the trial court level that "the record fails to disclose that no prejudice to the defendant could have resulted from the overnight release of the jury during deliberation." Hill, 562 So.2d at 14-15. The court found that, despite the total failure of the defendant to raise the issue or aver prejudice, "the mandate of Art. 791 to sequester the jury after the court's charge must be complied with or it *619 is reversible error." Id. at 15. In Hill, the jurors were released to go home overnight after they deliberated for approximately two hours, and, upon their return the next day, concluded the deliberations and rendered a verdict.
In the case at bar, the jury deliberated for over an hour before Juror Number 7 was excused from the panel and the alternate was substituted in his place. At no time were the remaining eleven jurors told to disregard anything Juror Number 7 may have said about the case or the events leading up to his dismissal from the jury. We are unable rebut any prejudice that may have arisen as a result of these events.
In Willis, the jurors were allowed to go home for the weekend. Thus, the instant case, like Hill and Willis, would appear at first glance to present reversible error. Also, contrary to what occurred in Allen, the trial court did not ask either defendant to concur in the decision not to sequester the jury, and the court did not explain the issue of sequestrating the jury to them. However, neither of the two defense attorneys objected to the decision to send the jury home for the night, although both raised the court's violation of Article 791(C) in their separate motions for new trial.
With respect to whether the record demonstrates any prejudice to the defendants, the record shows that the court spoke to the jurors about their obligations. Specifically, when the court released them for the night at the end of the first day of the trial, the court instructed the jurors not to discuss the case with anyone. More particularly, the court told them:
Do not discuss any aspect of this case with anyone. Not with your spouse, not with your family members, children, don't call your friends and ask, don't call pastor and say this is what's going on, what should I do. You're sequestered in that you're still part of this deliberating jury, but we're not going to send you to a hotel. Everybody is going to go home for the night.
The court further advised the jurors that they would commence their deliberations anew the next morning.
When the jury returned to court the next morning, the court inquired as to whether the jurors had complied with the court's instructions not to discuss the case with anyone: "Did everyone comply with the court's instructions regarding not discussing the case after you left here last night?" At this point, the record on appeal reflects that the "JURORS ANSWER IN AFFIRMATIVE." The record does not reflect whether each juror individually responded to the question or replied as a group (and if answering as a group that the court noted that all jurors responded). The court continued immediately thereafter:
Is there anyone who did not comply with those instructions? Okay. Ladies and gentlemen, you may now proceed upstairs to the jury room and commence your deliberations.
Ladies and gentlemen, let me just advise you of something that I didn't talk about before but I'm sure you would understand this. If at any time during your deliberations any one juror leaves the room for any reason, such as, to go [sic] restroom, just stop your deliberations until that juror gets back. Okay?
We note the court did not inquire as to other possible outside influences, such as exposure to television or newspapers. On the other hand, because the alternate juror had been substituted the previous evening, the jurors began their deliberations anew upon their return to court on the second day of trial. They remained sequestered thereafter until they returned the verdicts.
*620 In terms of the timeline of deliberations, the jury was originally charged at 7:00 p.m. on the first day of the trial. They retired to deliberate at 7:16 p.m. and returned to court with a question at 8:40 p.m.[3] They were sent out again two minutes later at which point the issue arose regarding Juror Number 7. After this, the juror was twice brought into the court, outside the presence of the other jurors, and was finally dismissed at 9:32 p.m. It was then that the alternate was substituted and the jury dismissed for the night. The next morning, the jury retired to deliberate at 8:43 a.m. and returned its verdict approximately one hour later, at 9:38 a.m. While time itself does not indicate that no influence was placed on the jurors, it does at least indicate that the jury spent some time in its deliberations after the alternate was substituted. Furthermore, the jury returned different verdicts (both 10 to 2 votes) as to each defendant, and the verdicts implicitly reflect the fact that one defendant was found in physical possession of cocaine and one was not.
A review of the changes enacted to Article 791(B) tends to support the conclusion that, absent an objection and showing of prejudice, the error is not reversible. When the legislature amended Article 791(B) to allow the parties to waive sequestration of the jury in a capital trial, it did not add any similar language to Paragraph C. Considering that the Supreme Court in Miller had already recognized that the error could be harmless, the legislature may have felt that no amendment was necessary.[4]
The record reveals no other errors patent.
CONCLUSION
Based on the foregoing, we find that the trial court erred in failing to sequester the jurors after their being given the jury charge as mandated by the literal language of La.C.Cr.P. art. 791(C). We further find that the trial court failed to properly question each juror on the record whether he or she had been influenced by another person, viewed television, heard a radio broadcast, or read a newspaper article about the case on the morning they began to deliberate. Finally, we find that insufficient instructions were given to the remaining eleven jurors after the dismissal of Juror Number 7. Consequently, we reverse the convictions of the defendants and remand the matter to the trial court for further proceedings.[5]
REVERSED AND REMANDED.
*621 LOMBARD, J., Concurs.
BELSOME, J., Concurs for Reasons Assigned by LOMBARD, J.
LOMBARD, J., Concurring.
Pursuant to La.Code Crim. Proc. art 791(C), "[I]n noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court." The trial court's failure to sequester the jury after charging the jury was clear error. Accordingly, I concur in the result.
NOTES
[1] The fact that Juror Number 7 told the remaining jurors what had occurred was reported by the trial court's secretary who was standing by the door of the jury room.
[2] At the time, La.C.Cr.P. art. 791(B) did not contain the provision, which allows the parties to jointly move that the jury in a capital case not be sequestered. Acts 1995, No. 1277 added that provision. No change was made to Paragraph C regarding mandatory sequestration of a jury after being charged in a non-capital case.
[3] The record does not reflect what the question was, nor does the transcript or record indicate that there were any objections lodged during this portion of the proceedings. It appears however that no additional charge was given.
[4] The amendment to Article 791(B) enacted by Acts 1995, No. 1277 was the second amendment that year. In Acts 1995, No. 1172, paragraph B was initially amended to provide for two subparagraphs. The first tracked the present language requiring sequestration in capital cases unless the court grants a joint motion waiving sequestration. Subparagraph (2) stated that when the court granted a joint motion under subparagraph (1), "the jury shall be sequestered after the court's charge until the completion of the sentencing hearing. The jury may be sequestered at any time upon order of the court." This language tracked that of Article 791(C) pertaining to sequestration in non-capital cases. The legislature's decision in Acts 1995, No. 1277 to remove the requirement for sequestration after the jury is charged in capital case implies that sequestration is also waivable in non-capital cases, either through action or inaction, as the requirements in non-capital cases generally are less stringent than capital cases.
[5] Because we are reversing the case on the error patent, the defendants' remaining assignments of error are moot.