WELCH, J.
| ¡^Appellant, Blainey Nicholas, M.D. (Blainey), appeals from a judgment on March 31, 2004, which denied his motion for a new trial. This motion sought a new trial following the trial court’s judgment on a Motion for Contempt entered on December 5, 2003, which found Blainey in contempt and ordered him to pay his former wife, appellee, Gerallyn Nicholas (Geral-lyn), past due interim periodic spousal support, past due final periodic spousal support, past due court-ordered attorney’s fees, and past due court-ordered court costs. That judgment also ordered Blai-ney to pay $1,500.00 for plaintiffs attorney’s fees in bringing the rule for contempt. The total- amount of the December 5, 2003, judgment against Blainey was $38,444.70.
For the reasons that follow, we affirm the trial court’s judgment denying Blai-ney’s motion for a new trial.
FACTS AND PROCEDURAL HISTORY
On July 18, 1998, Blainey and Gerallyn were married. Blainey is a doctor who *692 had been and, at the time of this appeal, wag employed at Chalmette General Hospital. Gerallyn had been and was, at the time of this appeal, unemployed. The couple ;did not have any children.
On June 12, 2002, Gerallyn filed a Petition For Divorce with the trial court pursuant to the provisions of La. C.C. art. 103(2) (on the grounds of adultery) and a Rule for Spousal Support, as well as a Motion to Proceed In Forma Pauperis. The petition cited the couple’s separation since November of the previous year and alleged that Blainey had committed adultery. It also included requests for interim spo,usal support and exclusive use of both the, family home and vehicle. Blainey was ordered to show cause why Gerallyn’s requests should not be granted at a hearing set for September 3, 2002. The record reveals without explanation that neither party was present for that hearing on September 3, 2002. On September 6, [32002, Gerallyn filed a Motion and Order to Reset Rule for Hearing. The new hearing was scheduled for November 18, 2002.
Both parties appeared for this proceeding,[1] during which the terms of the divorce were negotiated and agreed upon by stipulation. Blainey consented to amending the petition for divorce from a divorce based on La. C.C. art. 103(2) to a divorce based on La. C.C. art. 103(1), to the divorce being granted that day, and to make the following monetary payments: interim periodic spousal support in the amount of $2,000.00 per month, retroactive to the date of the filing of the petition for divorce and ending in May, 2003; a $500.00 monthly payment for the interim spousal support arrearages of $10,000.00; court costs up to $3'?5.00; and one-half of Gerallyn’s attorney’s fees or $2,000. Judgment to this effect was entered on December 6, 2002.
On January 6, 2003, Gerallyn filed a Motion for Contempt, alleging that Blainey had failed to pay the court-ordered spousal support for the month of December in the amount of $2,000.00, the $500.00 ordered for past due support of the court-ordered costs, and attorney’s fees. She also alleged she had reasons to believe Blainey was planning to leave his employment and leave the State of Louisiana. Based on this belief, she requested Blainey be ordered to pay the arrearages in full, instead of monthly as previously ordered by the court. A hearing was set for March 13, 2003.. On February 28, 2003; after several failed attempts to serve Blainey, Gerallyn filed an amended Motion. for Contempt, Motion to Make Past Due Spousal Support Executory, Motion for Attorney’s Fees, Issuance of a Wage Assignment Order, and Motion to Appoint a Curator Ad Hoc for the Absent Defendant. A curator ad hoc (Kasi Brannan) was appointed to represent Blainey and the amended motions were set for hearing on April 29, 2003.
14On April 29, 2003, Gerallyn did not appear personally, but was represented by her attorney of record who informed the court that her client had become ill and could not attend the hearing. Blainey did not appear and was represented by the appointed curator ad hoc. The record contains the testimony of the appointed curator detailing her efforts and initial difficulty in trying -to locate Blainey prior to the hearing. However, the curator was able ultimately to find him and he was still working, at least part time, at two places of employment and residing within Louisiana, but obviously avoiding service. She *693 testified that she spoke with Blainey by telephone and advised him of the proceedings to be held on April 29, 2003. The curator submitted her report and advised the court that because Blainey was still located in Louisiana, proceedings should not continue without service upon him, which could probably be obtained at either of his two places of employment. After providing her testimony, the curator requested and was granted a release from her appointment.
Counsel for Gerallyn also testified on behalf of Gerallyn to the effect that she had received no payments on behalf of Gerallyn or otherwise had any contact from Blainey regarding the arrearages owed on interim spousal support in the amount of $18,375.00. The trial court rendered a judgment signed on May 7, 2003, against Blainey, holding him in contempt of court, ordering him to pay the past due spousal support in the amount of $17,000.00, ordering payment of past due attorney’s fees and court costs totaling $1,375.00, and ordering the payment of attorney’s fees for bringing the rule in the amount of $750.00 together with curator ad hoc fees and costs totaling $569.70.
On June 6, 2003, Gerallyn filed yet another Motion for Contempt together with a Rule to Show Cause Why Final Periodic Spousal Support Should Not Be Granted based on Blainey’s complete failure to abide by the court’s prior judgments ordering payments. A hearing was set for July 10, 2003.
| fiNeither Blainey nor counsel to represent him appeared at the July 10th hearing. Both Gerallyn and her counsel were present and Gerallyn testified regarding her need for spousal support and of Blai-ney’s complete failure to pay her pursuant to the court’s prior judgments. The trial court entered judgment on July 11, 2003, holding Blainey in contempt of court, ordering him to pay past due interim periodic spousal support in the amount of $4,000.00 representing amounts due for April and May 2003; to pay the final periodic spousal support in the amount of $2,000.00 per month, retroactive to June 6, 2003; attorney’s fees in the amount of $750.00; and court costs.[2]
Another Motion for Contempt was filed by Gerallyn against Blainey on October 16, 2003, alleging Blainey again willfully disobeyed the court-ordered payments of interim periodic spousal support for the months of June 2002 through May 2003, and had also failed to pay the monthly court-ordered final spousal support payments for June 2003 through October 2003. A hearing was set for December 3, 2003.
At this hearing, only counsel for Geral-lyn was present. Counsel for Gerallyn informed the court that Gerallyn was ill that day and Blainey did not appear. During this hearing, counsel for Gerallyn was sworn in as both counsel and witness in order to testify concerning the nonpayment of the amounts previously ordered by the court. She testified that Blainey had paid a purge amount of $5,750.00 on August 25, 2003, but had not made any payments since.[3] Counsel also testified that *694 the total amount of arrearages on court-ordered payments as of the date of the hearing was $36,944.70. Judgment was then rendered in open court and signed on December 5, 2003, finding Blainey in contempt and ordering him to pay | fi$36,944.70 as a purge amount together with $1500.00 in additional attorney’s fees for that day’s rule. The court ordered that amount be made executory and that an income assignment with Blarney’s employer be put immediately into effect. In a supplemental judgment signed on December 22, 2003, the court issued a Writ of Attachment for Blarney’s arrest, subject to him making the purge payment of $36,944.70 for arrearag-es and $1,500.00 for attorney’s fees, at which time the attachment would be lifted.
Blainey then retained counsel who enrolled of record on his behalf and filed a Motion for New Trial, Motion to Enjoin Enforcement of Attachment, and for An Expedited Hearing on January 15, 2004. This motion claimed that the trial court had erroneously allowed Gerallyn’s counsel to testify as a witness in the case and relied on the testimony of Gerallyn’s counsel as prima facie evidence of nonpayment. Blainey also asserted that the purge amount ordered was “an excessive seizure of the income and property” of Blainey, in light of various garnishments of his wages in connection with judgments rendered on claims filed for community debt. He claimed that he is unable to make the purge payment and that his failure to pay would result “in his indefinite incarceration.” He requested that the judgment resulting from the April 29, 2003 hearing be declared null and void, thus making the judgment for the December 3, 2003 hearing also null and that he be granted a new trial on an expedited basis. He also requested a temporary order enjoining the execution of the writ of attachment as well as the court’s prior two judgments. On January 20, 2004, Blainey also filed a Motion to Terminate Final Support, a Petition to Partition Community Property, a Detailed Descriptive List of Assets and Liabilities, Interrogatories, and a Request for Production of Documents.
A hearing on these motions was set for March 16, 2004. At that hearing, the trial court denied the Motion for a New Trial, but reduced the purge payment to 17$3,000.00 and ordered it to be paid within five days of the hearing. A judgment to that effect, and also ordering Blainey to pay $1,500.00 per month toward any remaining arrearages for interim and/or final support, in addition to the monthly $2,000.00 final support obligation was rendered on March 31, 2004. It is from that judgment that Blainey appeals.
Discussion
On appeal, the Blainey contends the trial court erred in denying his Motion for a New Trial and refusing to vacate its judgment of December 5, 2003. He asserts three related Assignments of Errors: (1) the trial court erred by rendering a judgment on December 5, 2003, based on the testimony of the opposing party’s counsel; (2) the trial court erred by failing to grant the motion for a new trial because the December 5, 2003 judgment should be set aside; and (3) the trial court erred by rendering the December 5, 2003 judgment because it was based on a judgment which should be considered an absolute nullity.
Assignment of Error Number 1
Blainey claims that allowing Geral-lyn’s counsel to testify on her behalf in Gerallyn’s absence to establish Gerallyn’s entitlement to judgment based on Blai-ney’s nonpayment of prior court orders was reversible error because it violated *695 Rule 3.7 of the Louisiana Supreme Court Rules of Professional Conduct. At the time of the hearing at issue in December of 2003, Rule 3.7 provided as follows:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) The testimony relates to an uncontested issue;
(2) The testimony relates to the nature and value of legal services rendered in the case; or
(3) Disqualification of the lawyer would work substantial hardship on the client.
|R(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer’s firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.
(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.[4]
As this court has previously noted, this rule prohibits attorneys from acting as advocates in trials in which they are likely to be called as witnesses, but it does not prohibit attorneys from testifying at a trial about facts essential to the case. Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141, 1148 (La.App. 1st Cir.), writs denied, 623 So.2d 1335 and 1336 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994). As in this case, in Jordan, the plaintiffs attorney was allowed to testify concerning nonpayment by the defendant when no other witness was available to provide such testimony and the court found no violation of Rule 3.7.
In the case at hand, it was unforeseeable that Gerallyn would become ill on the date of the hearing and be unable to testify regarding Blarney's continued failure to pay as court-ordered. Moreover, the prior court orders directed Blainey to make the payments to Gerallyn’s attorney, on her behalf. Gerallyn’s attorney, therefore, had first-hand knowledge about Blarney’s failure to abide by the court’s orders, and was the only other person besides Gerallyn with that knowledge. Under these circumstances, it certainly would have worked substantial hardship on Gerallyn to disqualify her attorney from, testifying to these essential facts regarding Blainey’s noncompliance with the court’s prior orders.
Moreover, in Jordan, the court noted and relied in part on La. C.E. art. 601, which states: “Every person of proper understanding is competent to be a witness except as otherwise provided by legislation.” The court found that nothing in 19either the Rules of Professional Conduct or the Louisiana Code of Evidence prohibits an attorney from being a competent witness in a trial in which he represents one of the parties. The court then upheld the admittance of the attorney as both advocate and witness. Id. at 1149; see also, State v. Miller, 391 So.2d 1159, 1163 (La.1980); Bordelon v. Safeway Ins. Co., 380 So.2d 1379, 1382-1384 (La.App. 3rd Cir.), writ denied, 384 So.2d 799 (La.1980). Therefore, we cannot say that the trial court erred in allowing counsel for Geral-lyn to testify, in Gerallyn’s absence, for the very limited purpose of establishing that *696 no payments had been received by her on behalf of her client since the court’s prior order. Accordingly, this assignment has no merit.
Assignment of Error 2
Because we found no merit in Blainey’s first assignment of error, that the December 5, 2003 judgment should be set aside because of the attorney testifying, we likewise find no merit in Blainey’s argument that a new trial should have been granted on that same ground. Accordingly, we find no merit in Blainey’s second assignment of error.
Assignment of Error 3
In Blainey’s third and final assignment of error, he claims that the December 5, 2003 judgment should be set aside because it relies on the validity of the court’s three prior judgments containing the court orders for which Blainey was found in contempt. Blainey argues there are “errors and irregularities” in these prior judgments, and because the December 5, 2003 judgment incorporates awards for fees, costs, and support rendered in those prior judgments, then the December 5, 2003 judgment must be set aside. Again, we find no merit to Blainey’s arguments. First, he again asserts as a reason for nullifying the judgment the fact that Gerallyn’s counsel was allowed to testify, an argument we have twice rejected. Secondly, he argues the prior judgments on which the December 5, 2003 judgment [inwas based are absolute nullities for a sundry argued reasons, including that the divorce judgment, which was stipulated to, was invalid, that service was improper, and the court lacked jurisdiction over Blainey. However, the record reveals that Blainey has not timely appealed any of those prior judgments. Moreover, Blainey has not filed an appropriate action in the trial court to have any of the prior judgments declared null, as required by La. C.C.P. art. 2006. Finally, pursuant to La. C.C.P. art. 2085, which prohibits an appeal by a party who has voluntarily acquiesced in the judgment, we find that Blainey has no grounds on which to attack those prior judgments. To the extent that Blainey has made the court-ordered purge payment as well as some of the support payments ordered, he has acquiesced in, and cannot contest those judgments. Moreover, as to the alleged invalidity of the actual divorce judgment, Blainey’s motions filed in January of 2004, seeking partition of the community, certainly acknowledge the validity of the couple’s divorce, and he cannot now complain that it is an absolute nullity.
Conclusion
After thoroughly reviewing the record before us and the arguments posed by the appellant, we find no error in the trial court’s judgment. Accordingly, the judgment is affirmed at Blainey Nicholas’ costs.
AFFIRMED.
McClendon, j., concurs.

. Gerallyn appeared initially, but became ill and had to leave the hearing; her counsel was present and was authorized to enter into the stipulations on behalf of her client. Blai-ney appeared unrepresented, did not object to Gerallyn's absence and as detailed herein, agreed and stipulated thé terms of the judgment.

. The record does not contain an attachment for Blainey’s arrest issued in conjunction with the July 11, 2003 judgment; however, the record does contain a "Motion and Order to Lift Attachment” filed on behalf of Gerallyn, referencing an Order of Attachment issued by the court against Blainey on July 14, 2003, with a purge amount of $5,000.00, and informing the court that Blainey had paid the purge amount together with the court-ordered $750.00 in attorney’s fees. The attachment was lifted on September 5, 2003.

. Gerallyn’s counsel explained that $3,500.00 of this payment went to her client for past due support; $1,500.00 was applied to the court- *694 ordered attorney's fees, and the remaining $750.00 was for court-ordered court costs.

. Rule 3.7 was reenacted on January 20, 2004, effective March 1, 2004, to eliminate subsection (c).