943 So.2d 1181 (2006)
STATE of Louisiana
v.
Larry Dean ROBERTSON.
No. 2006 KA 0037.
Court of Appeal of Louisiana, First Circuit.
September 20, 2006.
J. Phil Haney, District Attorney, Jeffrey J. Trosclair, Assistant District Attorney, Franklin, Counsel for Plaintiff/Appellee State of Louisiana.
Lynden J. Burton, New Iberia, Counsel for Defendant/Appellant Larry Dean Robertson.
Before: PETTIGREW, DOWNING and HUGHES, JJ.
DOWNING, J.
Defendant, Larry Dean Robertson, was charged by grand jury indictment with *1182 aggravated rape, a violation of La. R.S. 14:42. Defendant pled not guilty. He was tried before a jury, which determined he was guilty. The trial court sentenced defendant to a term of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defendant appeals. We affirm his conviction and sentence.

FACTS
In the early morning hours of June 6, 1990, Comfort Martin, an eighty-eight year-old resident of Franklin, was awakened by a black man strangling her in her bed. The assailant overpowered Martin and raped her. Following the attack, Martin went to the nearby home of her brother-in-law, Leonard Martin, and reported to him that she had been attacked and raped. Martin was taken to Franklin Foundation Hospital.
Dr. Brent Allain[1] testified that he was called to the emergency room at approximately 4:00 a.m. on June 6, 1990 to evaluate Martin, who was his patient. Martin reported to him that she had been raped. Dr. Allain performed a physical exam on Martin and noted that she had bruising on her face, inner thighs, and vaginal area. Martin also had blood in her vaginal floor.
Martin also reported to Dr. Allain that her assailant asked her to perform oral sex on him, but she refused. Martin told Dr. Allain that she was able to retrieve a gun and fire the weapon's only bullet at her assailant, but she was again overpowered and the assailant took the gun from her. Martin stated that her assailant attempted to shoot her, but the gun no longer had any bullets in it. The assailant then left. A rape kit was collected at the hospital, including clothing worn by Martin, swabs of her vagina, scrapings of her fingernails and samples of her hair.
On June 6, 1990, Joseph Williams was arrested in connection with this offense; however, the evidence was insufficient to maintain the charge. Initial testing of the physical evidence in 1990 by Acadiana Crime Lab indicated that there were blood or semen stains on Martin's gown. Because DNA testing was not widely available in 1990, no further laboratory analysis of the evidence was performed; however, the evidence was preserved. From that point in time, the case was considered unsolved and no further progress was made in finding Martin's assailant. Martin died on January 15, 1997.
In 2003, the Acadiana Crime Lab received a grant to carry out DNA analysis on older unsolved cases. Pursuant to this grant, Acadiana Crime Lab sent some of the evidence from Martin's rape kit to Orchid Cellmark, a private laboratory located in Nashville, Tennessee, for DNA analysis. Orchid Cellmark's testing established a DNA profile of Martin's assailant.[2] This DNA profile was sent back to Acadiana Crime Lab, where Winnie Wong,[3] a forensic scientist, entered the data into CODIS (Combined DNA Index System), a database of DNA profiles.
Carolyn Booker, a forensic chemist and CODIS manager at Acadiana Crime Lab, testified that once a DNA profile is entered into the CODIS database, it is uploaded to the Louisiana State Police Crime Lab database and a statewide search for a *1183 match is performed. In this case, Acadiana Crime Lab was notified on November 21, 2003, that there was a match to the DNA profile with the sample submitted, and the individual was already entered into CODIS.
At that point, the identity of the individual was not revealed to Acadiana Crime Lab; they were only notified of a matching DNA profile and its reference number. The State Police Crime Lab then confirmed the match by reviewing the referenced DNA profile of the individual to whom the match was made to confirm it was the same profile. Following this procedure, the State Police Crime Lab sent a confirmation letter revealing the name of the individual whose DNA profile had matched the evidence submitted.
In March 2004, the State Police Crime Lab sent a confirmation letter to the Acadiana Crime Lab revealing the identity of the individual whose DNA profile matched the evidence submitted as the defendant. Acadiana Crime Lab turned over this information to the St. Mary Parish Sheriff's Office. Detective Richard Rivere questioned defendant and eventually obtained a blood sample, hair sample, and saliva swab from defendant. A DNA analysis was performed on defendant's blood sample, and a match was made to the results obtained by Orchid Cellmark.

ABSENCE OF DEFENDANT DURING TRIAL PROCEEDINGS
In his two assignments of error, defendant argues the trial court erred in not having him present at the commencement of his jury trial and in conducting the jury trial outside of his presence.
The defendant was physically present in the St. Mary Parish Courthouse on April 4, 2005, when his jury trial was scheduled to commence. The jury venire was excused from the courtroom in order for the defendant to address the court prior to jury selection. Outside of the presence of the jury venire, defendant expressed his dissatisfaction with his court-appointed attorney and the Indigent Defender Board (IDB) in general.
Defendant then continued his exchange with the trial court by stating he was not able to afford his own attorney and did not feel qualified to represent himself. The trial court then told defendant that he was "not going to let you keep rambling and shuffle [sic] papers. Now listen to me. You feel that you want a new lawyer. We went through this once before and then I believe you talked to Mr. Colwart and everything was okay."
At the trial court's prompting, Mr. Colwart then described his history of representing defendant in the present matter, including how their relationship was off to a rough beginning, but defendant eventually accepted Mr. Colwart's representation. However, when Mr. Colwart attempted to meet with defendant the Friday prior to trial, defendant refused to see him and indicated that Mr. Colwart was not his lawyer. Denisee Robertson,[4] the IDB Investigator assisting Mr. Colwart on defendant's case, confirmed that defendant cooperated with them at a meeting the week prior to trial, before things again went awry regarding defendant's attitude.
The exchange continued between defendant, the trial court, defense counsel and the prosecutor, with defendant insistent that he wanted the court to provide a different attorney for him. The prosecutor brought up the fact that defendant's initial IDB attorney was recused from representation.
The following exchange then occurred:

*1184 BY THE COURT:
. . .
We're going to proceed. Now, you have your choice. You can stay in this courtroom with Mr. Colwart, do you understand, and we can select the jury. I assure you he's an expert at that, and you'll be here.
(THE DEFENDANT NODS NEGATIVELY.)
BY THE COURT:
And you're shaking your head no. What do you want to do?
BY THE DEFENDANT:
I'm not doing either one of them, Your Honor.
* * *
BY THE COURT:
Okay. You're going to go to court this morning, sir.
Now do you want to be present in this courtroom while we select a jury or not?
BY THE DEFENDANT:
I'm not going to be present.
BY THE COURT:
You want to voluntarily absent yourself from the courtroom; is that right?
BY THE DEFENDANT:
I'm not voluntarily doing anything because I asked this Court already to hire me an attorney. You can't get me to cross-talk myself.
BY THE COURT:
Excuse me, Mr. Robertson. I'm going to try this one more time and I want you to really believe what I'm saying.
Now if you want to absent yourself from court, if you want to go back to your jail cell, we're going to go ahead and select a jury without you. I would prefer that you be in this courtroom and you aid and assist your attorney in picking a jury.
BY THE DEFENDANT:
I'm not going to be here.
* * *
BY THE COURT:
So it's a no, you don't wish to stay here and help select a jury.
BY THE DEFENDANT:
I've asked for this Court to provide me with an attorney according to my 6th Amendment right because I'm not having it going on with the ID Board.
* * *
BY THE COURT:
Okay. Well I have no choice then to proceed with the selection of the jury. If you want to go back to your jail cell, we'll have somebody escort you there, Mr. Robertson. Is that your decision?
BY THE DEFENDANT:
That's fine with me.
The exchange continued along these same lines with the defendant eventually walking out of the courtroom. Following defendant's departure, the trial court questioned Mr. Colwart and Ms. Robertson to determine their appreciation of defendant's behavior toward their representation of him. The trial court concluded that defendant voluntarily absented himself and that there was nothing else they could do except to move forward. The jury venire was then allowed to reenter the courtroom, and the trial court admonished the venire to not give any weight to the defendant's absence as he had exercised his right to do so and done so voluntarily.
Louisiana Code of Criminal Procedure art. 831 provides:
A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:

*1185 (1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.
B. Nothing in this Article shall prohibit the court, by local rule, from providing for a defendant's appearance at his arraignment by simultaneous audio-visual transmission, except when the defense counsel requests the defendant's appearance in open court.
Louisiana Code of Criminal Procedure art. 832 provides in pertinent part:
A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
(1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial; or
(2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.
Louisiana Code of Criminal Procedure art. 831 provides for a defendant's due process right to be present at every stage of the trial when his absence might frustrate the fairness of the proceeding. However, the provisions of Art. 831 are not absolute. A defendant may waive his right to be present by voluntarily absenting himself from the trial if he is "initially present for the commencement of the trial." La.Code Crim. P. art. 832. Louisiana Code Crim. P. art. 761 informs us that "[a] jury trial commences when the first prospective juror is called for examination." Here, the facts show that defendant was not present for the commencement of the trial; accordingly, the provisions of Art. 832 are inapplicable to the matter before us.
Even so, we note that under Diaz v. U.S., 223 U.S. 442, 453-59, 32 S.Ct. 250, 253-55, 56 L.Ed. 500 (1912), defendant's absenting himself from the courtroom for all proceedings can be viewed as a waiver of his right to be there. As the Diaz court noted, if such a principle did not apply, there could be no conviction of any defendant unless he wished to be present at the time the verdict was rendered.
In the present case, the record indicates defendant cooperated with his attorney earlier in the week preceding his trial. However, for no apparent reason, on the Friday prior to trial defendant refused to meet with his attorney. On the morning of trial, defendant made it very clear to the trial court that he wanted a new private lawyer hired by the court and he would not go forward under Mr. Colwart's representation. Defendant failed to articulate any *1186 complaint regarding Mr. Colwart's representation.
Based on the trial court's questioning of defendant, Mr. Colwart, and Ms. Robertson, it is apparent that defendant's refusal to participate in his own defense or be present in the courtroom was a delay tactic. Defendant had been provided representation, with which he earlier cooperated. However, defendant's behavior of demanding a new private attorney on the morning of trial was calculated to prevent his trial from occurring. There is no evidence in the record to indicate Mr. Colwart was unprepared or unwilling to provide effective representation to defendant.
Under these circumstances, defendant's demand to have a new private attorney hired on his behalf was not an option available to him. Accordingly, defendant's refusal to be present in the courtroom for jury selection and the presentation of evidence can only be considered as a voluntary absence.
Throughout the trial, both the trial court and Mr. Colwart made several efforts to invite defendant back into the courtroom so defendant could participate in the proceedings, all of which were ignored by defendant. We note Mr. Colwart was present in the courtroom for jury selection and the cross-examination of the State's witnesses. Under the facts of this case, Mr. Colwart's presence satisfies the due process requirements.
Accordingly, these assignments of error are without merit.

DECREE
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED
PETTIGREW, J., concurs, and assigns reasons.
PETTIGREW, J., concurring.
I am of the opinion the defendant voluntarily absented himself and waived his appearance at his trial under La.Code of Crim. P. art. 832. The conviction and sentence should be affirmed.
NOTES
[1] Dr. Allain was accepted by the trial court as an expert in family medicine.
[2] At no point in time did Orchid Cellmark identify defendant as Martin's assailant. The testing performed merely extracted the assailant's DNA from the victim's vaginal swab and identified the assailant's DNA profile.
[3] Wong was accepted by the trial court as an expert in forensic chemistry.
[4] No relation to defendant.