DO NOT PUBLISH

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**07-416**

**STATE OF LOUISIANA**

**VERSUS**

**IVORY LANE SIMON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO.CR-821-02
HONORABLE WENDELL R. MILLER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter, Judges.

AFFIRMED.

**Annette Roach**
**Louisiana Appellate Project**
**P.O. Box 1747**
**Lake Charles, LA 70602**
**Counsel for Defendant-Appellant:**
     **Ivory Lane Simon**

**Kevin D. Millican**
**Assistant District Attorney-31st Judicial District Court**
**P.O. Box 1388**
**Jennings, LA 70546**
**Counsel for Appellee:**
     **State of Louisiana**

PAINTER, JUDGE.

Defendant, Ivory Simon, appeals his conviction for attempted second degree murder. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

It is undisputed that Defendant shot David Santell Brown in Welsh, Louisiana on October 17, 2002.

On November 25, 2002, Defendant was charged by bill of information with attempted second degree murder, in violation of La.R.S. 14:27 and La.R.S. 14:30.1.He entered a plea of not guilty on December 9, 2002.

Jury selection began on January 24, 2006, and on January 26, 2006, a verdict of guilty of attempted second degree murder was rendered. On June 26, 2006, Defendant was sentenced to serve fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence. A motion to reconsider sentence was filed on July 5, 2006, and denied at a hearing held on October 16, 2006.

A notice of appeal was filed on July 5, 2006. Defendant is now before this court asserting the following five assignments of error:

> 1) The trial court erred in denying the Defendant's request for a mistrial when the jury was not properly sequestered as required by La.Code Crim.P. art. 791.
>
> 2) The trial court erred in removing the Defendant from the courtroom before the start of the trial and in trying the entirety of the case in his absence in violation of La.Code Crim.P. art. 832.
>
> 3) The charging instrument in this case contained improper language. Since this improper language was read to the jury several times, including during the final jury instructions in this case, it was not superfluous language. Its inclusion in the bill of information was not harmless.
>
> 4) The trial court improperly denied the Defendant the attorney of his choice in violation of La.Const. art. I, §13.

2

5) The evidence shows that the Defendant was acting in self-defense when he shot Santell Brown. Alternatively, the evidence admitted in this trial was insufficient to prove beyond a reasonable doubt that the Defendant had the specific intent to kill Santell Brown.

DISCUSSION

*Sufficiency of the Evidence*

Defendant asserts that the evidence adduced at trial was insufficient to support the conviction. When multiple issues are raised on appeal and sufficiency of the evidence is one of the alleged errors, the reviewing court should first determine whether the evidence is sufficient, because a ruling that the evidence was insufficient would necessitate an acquittal. *State v. Hearold,* 603 So.2d 731 (La.1992). Defendant contends that the evidence shows that he was acting in self-defense when he shot Brown. Alternatively, he asserts that the evidence admitted in this trial was insufficient to prove beyond a reasonable doubt that Defendant had the specific intent to kill Brown.

Testimony presented at trial shows that Dwayne Moore approached Defendant between 10:30 and 11:00 p.m. on October 17, 2002, because Moore's cousin reported that Defendant had slapped him. During this encounter, Moore approached Defendant, and Defendant pulled out a gun. Moore testified that when the gun was touching his chest, Defendant pulled the trigger. Moore was not shot, apparently because the gun jammed or was not loaded. Moore testified that he went to Brown's house, where he remained until 12:30 or 1:00 a.m.

Moore testified that when he left Brown's home, he and Brown met Defendant, who was standing in Brown's yard, and an argument occurred. The argument lasted ten to fifteen minutes. Defendant left the yard, and Brown, followed by Moore, Torrey Washington, Ernest Achane, and Rinehart Thibodeaux, began walking down the street

3

toward him. Moore testified that two to three minutes after the group began walking, Defendant pulled out a gun and shot Brown, who was in front of Anna Mae's or Prudomme's Café, which was located three houses from Brown's home. Moore testified that after Brown was shot, he and the other men present began running toward Defendant and Defendant "started unloading the gun," indicating that Defendant fired three more shots. Moore additionally testified that he was not armed and that the group was not chasing Defendant. Further, the testimony indicates that no one was trying to engage in a fight with Defendant or to argue with him.

Achane testified that on the night of the shooting, he walked around the corner, heard Defendant and Brown arguing, and saw Brown coming out of his yard. He heard Brown ask Defendant why he hit Brown's "brother" and, as Defendant was walking away, Defendant turned and shot Brown, who was fifteen to twenty feet away. Achane testified that when Brown was shot, he was walking with Brown, Moore was behind Achane, Thibodeaux was standing by his car, and Washington was coming around the corner in his car.

Thibodeaux testified that he heard arguing, saw Defendant point a gun toward where Brown and "them" were walking, and saw Defendant fire. Thibodeaux testified that he was twenty to twenty-five feet away and across the street from the café at that time. Thibodeaux further testified that Brown was coming up behind Defendant, but Brown never got close enough to Defendant "where they could get into a fight or anything," and no one was chasing Brown. Further, Thibodeaux's testimony was that Brown was approximately a house away from Defendant when he was shot. Thibodeaux testified that Defendant fired three to four shots. Additionally, Thibodeaux stated that no one but Defendant was armed.

4

Brown testified that he was at home on October 17, 2002, when Moore and his cousin stopped by. He stated that he later walked out of his house and heard Defendant on the corner hollering and cussing. Brown testified that at that time, Defendant was coming toward his home but never entered his yard. Brown further testified that he walked up the road about fifteen yards and began to argue with Defendant. Brown indicated that Moore, Achane, and Washington were present and standing behind him at that time. During the argument, he got within five to ten feet of Defendant; however, he was not chasing Defendant. Brown testified that the others were telling him to come on, and Defendant turned his back, pulled out a gun, and shot him while the two were face to face.

Brown admitted he told police that he went outside because he could hear Defendant down the street. Brown then read the following from his statement to police:

> I left out the  - - I left out the house and I could hear Ivory talking, so I ran out the house and asked him what's his problem, and he said it don't have  - - it don't have shit to do with you, this, and he kept walking on and he turned and looked at me and he shot me.

Brown admitted that he ran out of his house to pursue Defendant. He testified that he did not possess a weapon. Brown further testified that he did not think Defendant was going to shoot him and that he did not say anything to make Defendant turn around and shoot him. Brown testified that he was shot two to three minutes after he left his home. Brown further testified that once he was outside, he and Defendant exchanged about three or four words, and Defendant "just let lose." Brown testified that he did not threaten Defendant and only asked why Defendant slapped his cousin. Brown testified that he was hit by the first shot fired. Brown further testified that

5

Defendant slapped his cousin and that Defendant knew how he was, that he was going to slap Defendant back.

Clarence Simon, Defendant's father, testified that Defendant lived with him on October 17, 2002. Simon testified that Defendant used his gun to shoot Brown. Ben Richard, the Chief of Police in Welsh, testified that there were four empty casings in the gun used by Defendant when it was recovered by police. Richard further testified that the shooting occurred approximately one hundred fifty feet from Brown's home.

Dr. William Gaar testified that Brown had a gunshot wound to the right side of the chest and the bullet lodged near his spinal column. Gaar further testified that the bullet nicked Brown's heart, which required surgery. Gaar opined that Brown's injuries were life-threatening, and he was surprised that Brown was alive.

Defendant does not dispute that he shot Brown on October 17, 2002. However, Defendant contends that he shot Brown in self-defense.

> The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this Section shall not apply where the force or violence results in a homicide.

La.R.S. 14:19(A).

"In non-homicide cases in which a defendant claims self-defense, Defendant bears the burden of proof by a preponderance of the evidence." *State v. Runyon,* 05-36, p. 29 (La.App. 3 Cir. 11/2/05), 916 So.2d 407, 427, *writ denied,* 06-1348 (La. 9/1/06), 936 So.2d 207, *writ denied,* 06-667 (La. 11/17/06), 942 So.2d 526 (citations omitted).

> "The issue of self-defense requires a dual inquiry: (1) an objective inquiry into whether the force used was reasonable under the circumstances; (2) a subjective inquiry into whether the force was apparently necessary." *State v. Anderson,* 98-492, p. 10 (La.App. 3 Cir.

6

10/28/98); 721 So.2d 1006, 1011, *writ denied,* 98-2976 (La. 3/19/99); 739 So.2d 781 (citing *State v. Hall,* 606 So.2d 972 (La.App. 3 Cir. 1992), *writ denied,* 93-51 (La. 11/11/94); 644 So.2d 385).

*State ex rel. M.N.H.,* 01-1218, p. 4 (La.App. 3 Cir. 2/6/02), 807 So.2d 1149, 1152, *writ denied,* 02-1041 (La. 5/24/02), 816 So.2d 857.

Defendant argues that he shot Brown to avoid being attacked by Brown and the others who were approaching him as he tried to return home. Defendant further argues that Brown interjected himself into an argument that was between Defendant and another person. Additionally, Defendant argues that Brown was pursuing him and he knew Brown would retaliate. Further, Defendant asserts that he asked Brown to leave him alone and not to get involved. He argues that he was outnumbered and fired to protect himself from serious bodily harm that he had reason to believe was imminent based on the events unfolding and his knowledge of his pursuers.

Defendant did not present any witnesses at trial. The only evidence presented that weighed on the issue of self-defense was Brown's testimony that Defendant knew how he was and knew Brown would slap him because Defendant had slapped Brown's cousin. In contrast, testimony from several witnesses indicated that Defendant and Brown were arguing and were not involved in a physical altercation, that the group of people present were not rushing toward Defendant when he initially fired the gun, and that Brown and the other men were not armed.

Although Defendant contends that his actions were justified and that he acted in self-defense, he failed to prove the force used was reasonable under the circumstances and that the force was apparently necessary, *i.e.*, that he was in imminent peril of great bodily harm or reasonably believed himself to be in such danger.

7

Defendant further argues that he did not have the specific intent to kill Brown.

The supreme court has explained:

> To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La.R.S. 14:30.1, attempted second degree murder requires specific intent to kill. *State v. Huizar*, 414 So.2d 741 (La.1982). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); *State v. Butler,* 322 So.2d 189 (La. 1975); *State v. Martin,* 92-0811 (La.App. 5 Cir. 5/31/94), 638 So.2d 411.

*State v. Bishop,* 01-2548, p. 4 (La. 1/14/03), 835 So.2d 434, 437.

The supreme court has further stated that:

> Deliberately pointing and firing a deadly weapon at close range are circumstances which will support a finding of specific intent to kill. *State v. Seals,* 684 So.2d 368, 373 (La.1996) (citing *State v. Williams*, 383 So.2d 369 (La.1980); *State v. Procell,* 365 So.2d 484 (La.1978)).

*State v. Brown,* 03-897, p. 22 (La. 4/12/05), 907 So.2d 1, 18.

The evidence indicates that Defendant pulled a gun and fired at Brown, who was five to twenty feet from Defendant at that time. Based on this evidence, we find that the State proved Defendant had the specific intent to kill Brown.

*Mistrial*

Defendant also contends that the trial court erred in denying his request for a mistrial when the jury was not properly sequestered as required by La.Code Crim.P. art. 791.

When the jury notified the trial court that it had reached a verdict, defense counsel moved for a mistrial on the basis that the jurors were not sequestered in accordance with La.Code Crim.P. art. 791. Defense counsel informed the trial court

8

that after the jury was charged, three of the jurors were allowed to go home and the remainder had lunch across the street from the courthouse. The trial court noted that it finished charging the jury at 12:16 p.m. and the jurors returned at 1:30 p.m. to begin deliberations. The trial court then questioned each of the twelve jurors individually.

Leslie John Landry informed the court that after the jury was charged, he went to the jury room, drove home to eat, and returned at 1:15 p.m. Landry stated that during the time he was gone, he did not discuss the case with anyone and did not allow anyone else to discuss the case with him. The court questioned him, and he stated that he did not recall any exchange with a fellow juror regarding the trial. The remaining eleven jurors were questioned about where they had eaten lunch and whether they had spoken to anyone about the case, juror or non juror. The trial court subsequently denied the motion for mistrial, finding there was no prejudice although the jury was not sequestered for one hour and fifteen minutes before deliberations began.

Louisiana Code of Criminal Procedure Article 791 provides, in pertinent part, as follows:

> A. A jury is sequestered by being kept together in the charge of an officer of the court so as to be secluded from outside communication, except as permitted by R.S. 18:1307.2.
>
> . . . .
>
> C. In noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court.

This court discussed art. 791 in *State v. Maze,* 596 So.2d 218, 219-20 (La.App. 3 Cir.), *writ denied,* 604 So.2d 963 (La.1992), as follows:

> The purposes of sequestration are to insulate the jurors from outside influence, or the possibility thereof, and to insure that their verdict will be based upon the evidence developed at trial. *State v.*

9

*Parker,* [372 So.2d 1037 (La.1979)] supra; *State v. Marchand*, 362 So.2d 1090 (La. 1978). So strictly is the prophylactic rule enforced that upon separation of the jury a presumption of prejudice arises which may only be rebutted if it affirmatively appears that no prejudice to the accused could have resulted. See, *State v. Parker,* supra; *State v. Marchand,* supra; *State v. Willis,* 371 So.2d 1327 (La.1979). However, in a later case, *State v. Miller,* 391 So.2d 1159 (La.1980), wherein the trial judge allowed the jurors to read the newspaper and watch television during defendant's trial, the court noted that defendant did not assert that he had been prejudiced. Rather, defendant requested that the court presume prejudice. The court found such a presumption to be unwarranted and, in citing La.C.Cr.P. art. 921, held that because no prejudice had been shown, any error was harmless.

Defendant asserts that prejudice should be presumed and a new trial ordered due to the trial court's failure to comply with La.Code Crim.P. art. 791(C). Defendant notes that the trial court questioned the jurors but did not question Defendant about the error as was done in *State v. Allen*, 97-696 (La.App. 5 Cir. 1/14/98), 707 So.2d 72, *writ denied*, 98-432 (La. 6/26/98), 719 So.2d 1054. Defendant additionally notes that none of the jurors were asked if they read anything about the case or if they had heard anything about the case on the television or radio. Defendant further asserts that several jurors were asked if they heard anyone talk about the case and whether anyone had tried to talk to them about the case, but were not specifically asked if they had talked about the case. Defendant then suggests that juror Landry was being evasive in his answers to questions by the trial court and not merely forgetful. Defendant further suggests Landry's responses left open the possibility that the jury did not abide by the trial court's instructions.

Defendant points out that all jurors were free to leave after the jury instructions were completed by the trial court and were not accompanied by a deputy or bailiff as was done in *State v. Smith,* 96-261 (La.App. 3 Cir. 12/30/96), 687 So.2d 529, *writ denied,* 97-314 (La. 6/30/97), 696 So.2d 1004.

10

The State argues that although the presumption of prejudice did arise in this case because of the failure to sequester the jury, the presumption was rebutted by the testimony of the jurors. The State argues that, because no prejudice resulted, the trial court properly denied Defendant's motion for mistrial. In support of its argument, the State cites *Allen*, 707 So.2d 72, and *State v. Jones,* 34,863 (La.App. 2 Cir. 8/22/01), 794 So.2d 107, *writ denied,* 01-2648 (La. 8/30/02), 823 So.2d 938.

The jury in the case *sub judice* did not begin deliberations before leaving for lunch. Accordingly, the failure to sequester the jury in the case at bar was not as egregious as the failures in those cases cited by Defendant. The jury in this case was not sequestered for approximately one hour and fifteen minutes while the jurors ate lunch.

Further, the trial court questioned each of the jurors regarding whether they had spoken to anyone about the case and whether anyone had spoken to them about the case. Each of the twelve jurors indicated they had not. While the trial court should have questioned each juror regarding whether they heard or read anything about the case in the media, the trial court's failure to do so did not prejudice Defendant. There was no evidence that they did so. At the conclusion of jury selection, the trial court informed the jurors that they should not talk to each other about the case until jury deliberations and should not talk to anyone else about the case. The jurors were additionally instructed not to read any news articles or listen to radio or television reports about the case. After the conclusion of the first day of trial, the trial court stated the following to the jury: "Remember the instructions, of course, that I gave you at the outset about not discussing the case with anybody else or each other, or to allow anybody else to talk to you about it either, okay."

11

Defendant's assertion that the trial court did not question him as the trial court questioned the defendant in *Allen* is correct. However, there is nothing to indicate that the courts in *Jones* and *Brown* questioned the defendants in those cases. As in *Allen,* the jurors in the case at bar indicated they had not talked about the case. The trial court's questioning of the jurors in this case far exceeded that done by the trial court in *Brown.*

Accordingly, we find that the trial court properly denied Defendant's motion for mistrial.

*Defendant's Absence from Trial*

Defendant further contends that the trial court violated his constitutional right to confrontation by conducting his entire trial in his absence and that the trial court compounded this error in its explanation to the jury as to the reason for his absence from trial.

Louisiana Code of Criminal Procedure Article 831 provides, in pertinent part, as follows:

> A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
>
> . . . .
>
> (3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
>
> (4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
>
> (5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
>
> (6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.

12

However, exceptions to this rule are provided in La.Code Crim.P. art. 832, which provides, in pertinent part:

> A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
>
> (1)He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial; or
>
> (2)After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.

"A jury trial commences when the first prospective juror is called for examination." La.Code Crim.P. art. 761.

On the date jury selection began, the judge had all prospective jurors removed from the courtroom. At that time, Defendant gave the judge a business card bearing the name Kevin Patrick Monahan. Defendant informed the trial court that he had retained Mr. Monahan and that Mr. Monahan had advised him to ask for a continuance. The trial court told Defendant that he had not received any information from Mr. Monahan indicating that he represented Defendant; therefore, the trial court gave Defendant two options: continue to let Jack Nickel, his appointed attorney, represent him or represent himself. The trial court then informed Defendant that he would be going to trial that week regardless. An extensive exchange regarding Mr. Monahan's representation of Defendant and the trial court's insistence that Defendant proceed to trial followed. The trial court denied Defendant's request for a continuance and told him that he could represent himself or go to trial with Mr. Nickel. An exchange ensued in which Defendant refused to represent himself and refused to have Mr. Nickel

13

represent him and which resulted in Defendant being held in contempt of court and being escorted from the courtroom.

Defendant was subsequently escorted back into the courtroom, at which time the trial court asked Defendant if he could sit in the courtroom and behave. Defendant refused to stay if he could not have the attorney he wanted.

With Defendant absent, the jury venire entered the courtroom, the trial court called roll, and the jury box was purged after excuses were taken. Following a recess, Defendant was brought back into the courtroom, outside the presence of prospective jurors. At that time, Defendant informed the trial court that he could not breathe. The record indicates there was "[u]nintelligible screaming" from Defendant. Defendant then stated his handcuffs were too tight, his back hurt, and he needed a doctor. The trial court informed Defendant that if he behaved, he could remain in the courtroom. Defendant responded as follows: "I need -- I don't want to remain in no fucking courtroom. I want to go to the hospital." Defendant continued to tell the trial court that he was in pain and needed a doctor. Defendant was again escorted from the courtroom. The trial court stated that Defendant would be in an adjoining room where he could watch the proceedings via video feed and that counsel would be allowed to consult with Defendant during the course of trial. The case at bar was subsequently called for trial.

During jury selection, the trial court informed the potential jurors Defendant was not present in the courtroom "[d]ue to his emotional state." A jury was then selected and court recessed for the day.

The following day, Defendant was brought into the courtroom prior to any witnesses being called. The trial court asked Defendant if he wanted to attend the

14

proceedings, at which time Defendant stated three times, "I don't want to be in here." The trial court informed Defendant to let the deputy know if he wanted to speak to his attorney and that a recess would be taken if he did . Defendant then stated that he did not have a lawyer. Defendant was returned to the adjoining room to watch the proceedings via video feed.

On the last day of trial, after the jury was charged but before the verdict was returned, Defendant was brought back into the courtroom. At that time, the trial court asked Defendant if he wanted to remain in the courtroom. Defendant stated that he wished to remain in the adjoining room.

On appeal, Defendant argues that he was not present in the courtroom at the commencement of his trial as required by La.Code Crim.P. art. 831 and that he was not furnished counsel to sit with him and assist in communication between counsel trying the case. Further, he points out that the disruptive behavior, which could be considered a waiver of his constitutional right to confrontation, occurred prior to the time his case was called to trial. Defendant argues that he had a right to be present during the start of his trial and should not have been removed from the courtroom until it was seen whether his disruptive behavior and abusive actions would continue in the presence of the jury. Defendant additionally asserts that the trial court's explanation of his absence was prejudicial, as the trial court stated that Defendant was not present in the courtroom due to his emotional state.

However, similar behavior has been held to be a voluntary waiver of the right to be present during proceedings. *State v. Peralta,* 01-149 (La.App. 5 Cir. 1/15/02), 807 So.2d 967, *writ denied,* 02-541 (La. 1/24/03), 836 So.2d 41, *State v. Robertson,*

15

06-37 (La.App. 1 Cir. 9/20/06), 943 So.2d 1181, *writ denied,* 06-2391 (La. 4/27/07), 955 So.2d 683.

We find that the trial court did not abuse its discretion by having Defendant removed from the courtroom prior to jury selection. Further, the trial court asked Defendant on several occasions whether he wanted to return to the courtroom, but Defendant continuously informed the trial court that he did not, thus waiving his presence.

*Language of the Charging Instrument*

Defendant asserts that the charging instrument in this case contained improper language. Since this language was read to the jury several times, including during the final jury instructions in this case, he contends that it was not superfluous language. Further, he argues that its inclusion in the bill of information was not harmless.

The Defendant was charged with attempted second degree murder. The bill of information charging the Defendant reads, in pertinent part, as follows:

> IVORY LANE SIMON, in the Parish of Jefferson Davis on or about 10117/2002, committed the offense of ATTEMPTED SECOND DEGREE MURDER in that IVORY LANE SIMON DID WITH SPECIFIC INTENT ATTEMPT TO KILL OR INFLICT GREAT BODILY HARM, UPON DAVID SANTELL BROWN, (A FELONY) IN VIOLATION OF LSA R.S. 14:27 AND 14:30.1. . . .

To support a conviction for attempted second degree murder, the State is required to prove that a defendant had the specific intent to kill. Specific intent to inflict great bodily harm is not sufficient. *State v. Williams,* 95-879 (La.App. 3 Cir. 1/31/96), 670 So.2d 414.

Defendant points out that during voir dire, a potential juror questioned whether a defendant would be guilty of second degree murder if he merely had the intent to

16

inflict great bodily harm. The clerk read the bill of information during the trial court's preliminary instructions to the newly selected jury. Additionally, the incorrect portion of La.R. S. 14:30.1 was then read by the trial court. During final jury instructions, the trial court again had the clerk read the bill of information.

The State asserts that the jury instructions did not include the language "or inflict great bodily harm." Additionally, the instructions specifically included language advising the jury not to consider the bill of information as evidence. The State cites *Bishop,* 835 So.2d 434, in which the supreme court followed its ruling in *State v. Hongo,* 96-2060 (La. 12/2/97), 706 So.2d 419, wherein the supreme court held that an erroneous jury instruction which improperly included "intent to inflict great bodily harm" in an attempted second degree murder case was subject to harmless error analysis. Defendant asserts that the incorrect references in the case at bar raise the question of whether his trial was fair and whether the jury actually found he had the specific intent to kill when he shot toward persons coming up behind him. Defendant further asserts that it would be mere speculation to try to determine the effect this error had on the outcome of trial.

The State further asserts no error occurred in the case *sub judice* because the trial court did not give an improper charge to the jury and instructed the jury that the bill of information was not to be considered evidence.

In *State v. Cavazos,* 610 So.2d 127, 128 (La.1992), the supreme court stated the following:

> In outline, the bill tracked the short form provided by La.C.Cr.P. art. 465, subd. A(7) for charging attempted murder: that "A.B. attempted to murder C.D." The additional and somewhat confusing language had no bearing on the validity of the bill. A bill or indictment which charges an offense according to the short forms provided by Art. 465 "shall not be invalid or insufficient because it contains repugnant allegations.

17

Unnecessary allegations may be disregarded as surplusage." La.C.Cr.P. art. 486. As the Official Revision Comment to Art. 486 observes, "if the additional allegations confuse the charge they may very appropriately be disregarded as surplusage."

The court then noted that the defendant did not file a pre-trial motion to quash attacking the bill of information and stated that a post-verdict attack on the sufficiency of an indictment did not provide grounds for setting aside a conviction "unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense." *Id.* The court found that the bill of information clearly identified the offense charged and met minimal due process requirements.

In *State v. Simon,* 617 So.2d 153 (La.App. 3 Cir. 1993), the defendant argued the bill of information was defective. This court found the following:

> Although this court has held that it is reversible error to include in a jury charge the words "or to inflict great bodily harm" when defining attempted second degree murder, *State v. Guin,* 444 So.2d 625 (La.App. 3d Cir.1983), such a statement in a bill of information is not error. The purpose of a bill of information is to fairly inform the defendant of the charges against him while a charge to a jury is an instruction to the jury on exactly how to apply the law. La.C.Cr.P. arts. 464 and 802. The indictment is not fatally defective in that it did in fact fairly inform the defendant of the charges of which he was accused.

*Id.* at 156. This court went on to note that the defendant first raised the issue on appeal, and stated the following:

> Defendant did not file a motion to quash the bill of information nor did he object to its contents during trial. As stated by this court, a defendant cannot complain of a technical insufficiency in a bill of information after conviction if it fairly informs the defendant of the criminal charge against him. *State v. Robinson,* 549 So.2d 1282 (La.App. 3d Cir.1989). The defendant must further show he has been prejudiced by surprise or a lack of notice. *Robinson, supra.* When a defendant does not claim he was surprised or prejudiced, this court's inquiry is limited to whether the bill of information fairly informed him of the charge. *Robinson, supra.*

*Id.*

In light of these cases, we find that the inclusion of "inflict great bodily harm"

18

in the bill of information did not constitute error. Further, at no time did Defendant object to the reading of the bill of information. Therefore, any error concerning the reading of the bill or prejudice resulting therefrom was waived. La.Code Crim.P. art. 841.

*Denial of Choice of Attorney*

Defendant contends that the trial court improperly denied him the attorney of his choice in violation of La.Const. art. I, § 13.

> Both the state and federal constitutions guarantee a defendant's right to the assistance of counsel. Louisiana Const. art. I, § 13 provides in relevant part: "At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." The Sixth Amendment to the United States Constitution likewise carries such a guarantee. Although the Sixth Amendment primarily guarantees the right to effective counsel, it also includes the right to select and be represented by counsel of choice. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1696, 100 L.Ed.2d 140 (1988); *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) (stating unequivocally, "[i]t is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). The right to counsel of choice, however, is not absolute. In *State v. Harper,* 381 So.2d 468 (La.1980), this court stated:
>
> > As a general proposition a person accused in a criminal trial has the right to counsel of his choice. *State v. Leggett,* 363 So.2d 434 (La. 1978); *State v. Mackie,* 352 So.2d 1297(La.1977); *State v. Anthony,* 347 So.2d 483 (La.1977). If a defendant is indigent he has the right to court appointed counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* [407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)]; *State v. Adams,* 369 So.2d 1327 (La.1979); *City of Baton Rouge v. Dees,* 363 So.2d 530 (La.1978). An indigent defendant does not have the right to have a particular attorney appointed to represent him. *State v. Rideau,* 278 So.2d 100 (La. 1973). An indigent's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of

19

> justice. *State v. Jones,* 376 So.2d 125 (La.1979); *State v.*
> *Leggett, supra; State v. Mackie, supra.*

> *Harper,* 381 So.2d at 470-71. As this court has also explained, "The
> right of defendant to counsel of his choice must be exercised at a
> reasonable time, in a reasonable manner, and at an appropriate stage
> within the procedural framework of the criminal justice system of which
> it is a part." *State v. Lee,* 364 So.2d 1024, 1028 (La.1978).

*State v. Scott,* 04-1312, pp. 7-8 (La. 1/19/06), 921 So.2d 904, 916, *cert. denied,* 75 U.S. 3167, 127 S.Ct. 137 (2006).

On October 18, 2002, the trial court appointed Tim Cassidy to represent the Defendant and fixed a bond. A bill of information was filed on November 25, 2002. On December 9, 2002, Defendant was arraigned and was represented at the arraignment by Mr. Cassidy. On May 14, 2003, Mr. Cassidy filed a motion to withdraw as counsel, because he had previously represented the victim in the matter.

On May 19, 2003, Defendant appeared with Daniel Stretcher, Sr. Mr. Stretcher filed a motion to withdraw on November 17, 2003, indicating he previously represented one of the State's key witnesses. On November 18, 2003, the court appointed Robert Lounsberry, Sr. to represent Defendant. At that time, Defendant advised the trial court that he might hire his own attorney. The trial court ordered Defendant to hire an attorney by December 15, 2003, at 9:00 a.m. On September 21, 2004, Mr. Lounsberry informed the trial court that he had a possible conflict, because he had represented two potential witnesses in the matter. Defendant then stated that he had no problem with Mr. Lounsberry representing him. Mr. Lounsberry filed a motion to withdraw on November 17, 2004. Jack Nickel was then appointed to represent Defendant.

On January 23, 2006, the day prior to jury selection, Defendant asked that Mr.

Nickel be removed from his case because Mr. Nickel refused to file a motion to quash, which Mr. Nickel felt was meritless. The trial court asked Defendant if Mr. Nickel was his fifth attorney and if there would ever be an attorney he was ready to go to trial with. Defendant stated, "Yeah, that'd be one that I know that's going to work with me." the trial court then replied that the attorney had better be in court at 9:00 the following morning because Defendant was going to trial. Defendant said he could not promise the court that because he had to set up an appointment to meet with the attorney. The trial court subsequently informed Defendant that Mr. Nickel would help Defendant try the case. The trial court then made the following statement: "I'll see you at nine o'clock (9:00) tomorrow morning, and you better have your attorney -- if you -- if you have hired another attorney, you better have him or her here; otherwise, Mr. Nickel will be here with you and you will go to trial tomorrow morning."

The following day, Defendant appeared for jury selection. At that time, he handed the trial court a card bearing the name Kevin Patrick Monahan. Defendant informed the trial court that he had retained Mr. Monahan and that Mr. Monahan had advised him to ask for a continuance. The trial court then made the following comments:

> We have attempted to have four (4) different attorneys represent you throughout this proceeding. You have never attempted to hire your own attorney until now, and I told you yesterday that although you were welcome to do it that the attorney would need to be prepared to go forward with the trial today. I have not received a call from Mr. Monahan or any other indication that he represents you, neither a Motion to Enroll, a Motion to Continue, nor even a telephone call to say that he's -- he's considering representing you. So other than what you're telling me here today, I have no indication Mr. Monahan is representing you, nor is he here ready to go to trial.

The trial court gave Defendant two options–continue to let Mr. Nickel represent him or represent himself. Defendant also later informed the trial court that Mr. Monahan

21

asked him to have the trial court call his office. During the course of trial, the trial court stated for the record that his office had not received any information from Mr. Monahan. As discussed in assignment of error number two, Mr. Nickel represented Defendant throughout trial.

Defendant argues that even though Mr. Nickel was his fourth attorney, the first three attorneys withdrew from the case due to prior representation of prosecution witnesses. Defendant asserts that his request to have Mr. Nickel removed from the case was his first request to have new counsel appointed. Defendant asserts that the request was not an attempt to delay trial. Additionally, earlier trial settings had been upset due to his hospitalization, imprisonment in the federal system, and to resolve a recusal motion. Defendant further asserts that it was unclear whether his conflict with Mr. Nickel was apparent until immediately prior to trial.

Defendant argues that the trial court's misunderstanding of the history of his case led to his being denied the right to counsel of his choice and the right to confrontation discussed in assignment of error number two. Defendant further asserts that proper consideration was not given to the facts of this case in the denial of his right to counsel of his choice and that this error is reversible per se under the specific facts in this case.

The State asserts that the trial court did not abuse its discretion when denying Defendant's request for a continuance, because the offense occurred thirty-nine months prior to trial. During that period, Defendant had four appointed attorneys and never retained counsel, although he had ample time to do so. Additionally, the trial court noted that even though Defendant had more than two months between the November

22

15, 2005 and January 23, 2006 trial fixings, it was not until the morning of trial that Defendant advised the trial court that he had retained counsel.

In *State v. Bonit,* 05-795 (La.App. 1 Cir. 2/10/06), 928 So.2d 633, *writ denied,* 06-1211 (La. 3/16/07), 952 So.2d 688, the trial court found that the defendant had waited too long to move to hire his own attorney. The first circuit found that the trial court correctly denied the motion to hire private counsel, stating the day of trial was too late of a date for the defendant to assert his right to hire private counsel. The court further noted that granting the motion would have obstructed the orderly procedure of the trial court.

In *State v. Dilosa,* 01-24 (La.App. 1 Cir. 5/9/03), 849 So.2d 657, *writ denied,* 03-1601 (La. 12/12/03), 860 So.2d 1153, the first circuit found that the defendant did not exercise his right to retain counsel in a reasonable time, manner, or stage of the proceedings where on the date of trial he notified the court that he wanted to retain private counsel and moved for a continuance. Further, the appellate court found that the trial court did not err in denying the defendant's request for a continuance of his trial.

Based on these cases, Defendant was not denied the counsel of his choice. He had ample time to hire the attorney of his choice and failed to do so. Defendant's attempt to hire the attorney of his choice was not exercised at a reasonable time or at an appropriate stage of the proceedings.

CONCLUSION

For these reasons, Defendant's conviction is affirmed.

AFFIRMED.

23